61 A.3d 1258

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. KEVIN M. CAMPFIELD, DEFENDANT–RESPONDENT.

Argued September 10, 2012—Decided January 10, 2013.

222

*Courtney M. Cittadini,* Assistant County Prosecutor, argued the cause for appellant (*Theodore F.L. Housel,* Atlantic County Prosecutor, attorney).

*Diane M. Toscano,* Assistant Deputy Public Defender, argued the cause for respondent (*Joseph E. Krakora,* Public Defender, attorney).

*Ashlea D. Thomas,* Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (*Jeffrey S. Chiesa,* Attorney General, attorney).

Justice PATTERSON delivered the opinion of the Court.

The Court considers the factual basis for defendant Kevin Campfield's guilty plea to the offense of second-degree reckless manslaughter in violation of *N.J.S.A.* 2C:11–4(b). This case arose from the death of Ivory Bennett, an acquaintance of defendant, on January 17, 2006. By defendant's admission, following an evening of alcohol consumption, Bennett sustained a head injury and lost consciousness after falling during an attempt to escape from defendant, who was pursuing him. By defendant's account, he attempted to rob the unconscious Bennett, dragged him along the ground, and punched the victim repeatedly in the face. Defendant then forced Bennett, at gunpoint, to remove most of his clothing

despite the frigid winter weather. Defendant chased Bennett into dense woods, fired two shots and abandoned his pursuit of the victim. Bennett was found the following day drowned in a creek.

Defendant pled guilty to two of the eleven offenses for which he was indicted, second-degree reckless manslaughter and second-degree robbery. The trial court conducted a plea hearing during which defendant was questioned by his counsel and by the prosecutor. The trial court sentenced him to an eight-year prison term for the reckless manslaughter offense and a consecutive seven-year prison term for the robbery offense. Defendant appealed, arguing in part that the factual basis for his guilty plea to the reckless manslaughter charge was inadequate. The Appellate Division agreed, reversing defendant's conviction on the ground that the plea colloquy did not establish that defendant appreciated the risk of Bennett's death at the time of the crime.

We now reverse. We hold that defendant's admissions in his plea colloquy established an adequate factual foundation for his guilty plea to the crime of reckless manslaughter. Defendant admitted to the trial court that he punched his intoxicated and incoherent victim, attempted to rob him, forced him to remove his clothing on a cold January night, and chased him into a wooded area, where he died. Defendant acknowledged that his conduct was reckless and that it was a contributing cause of Bennett's death. The factual foundation presented to the trial court satisfied the standard set by *Rule* 3:9–2 and our case law, and defendant's conviction is accordingly reinstated.

## I.

On the night of January 17, 2006, Officer Brandon Stocks of the Pleasantville, New Jersey Police Department initiated an investigation of a report that Bennett, a twenty-five-year-old resident of Pleasantville, was missing. Bennett's mother told police that she was alarmed because the previous evening her son had not followed his usual practice of contacting her when he planned to stay out overnight. She had also heard gunshots near her apart-

ment building at approximately 1:00 a.m. Police learned from another relative of Bennett that the relative had seen Bennett and defendant at a convenience store that evening. Another witness recalled that, while drinking gin with some other men that night, Bennett and defendant had argued, and that he last saw Bennett running toward the apartment that he shared with his mother, pursued by defendant.

The following day, police officers found bloody clothing on a path behind Bennett's apartment complex. A day later, police searched a wooded area behind the complex that was covered by brush so thick that they needed heavy equipment to gain access to the area. In that search, officers found Bennett's body, face down in a creek. Despite the midwinter cold, Bennett was wearing only a t-shirt, two undershirts, boxer shorts and one sock. An autopsy revealed multiple blunt force injuries to Bennett's head, including scalp contusions and lacerations, but the cause of death was asphyxiation due to drowning.

Defendant met with police officers on January 20, 2006. Informed of the discovery of Bennett's body, defendant responded, "listen, I didn't kill him, all I did was I had a fight with him." The officers instructed defendant not to say anything further and administered warnings pursuant to *Miranda v. Arizona*, 384 *U.S.* 436, 86 *S.Ct.* 1602, 16 *L.Ed.*2d 694 (1966).

Defendant later waived his *Miranda* rights and agreed to give a taped statement under oath. He admitted that on the night of January 17, 2006, he and Bennett began to argue while drinking gin with two other men near Bennett's apartment complex. According to defendant, all four men were intoxicated. He told police that after the two other men left, he followed Bennett as he attempted to return to his mother's home. Apparently alarmed at defendant's pursuit, Bennett slipped on a stairwell and fell over the side railing, hitting his head on the cement sidewalk below.

Defendant told police that he found Bennett unconscious and bleeding from a wound to the head. He admitted that he emptied Bennett's pockets of a small amount of cash, and dragged Bennett

ten to fifteen yards. Defendant admitted that when Bennett awoke, defendant punched him four or five times "pretty hard" in the face. According to defendant's statement, when Bennett attempted to resist, defendant brandished a handgun, pushed Bennett back on the ground and forced him at gunpoint to remove most of his clothing. Defendant recalled that despite his head injuries and intoxicated state, Bennett fled, running into the dense woods behind the apartment complex. Defendant said that he attempted to chase Bennett, but was deterred from further pursuit by thick brush. He told police that he fired two gunshots in an attempt to stop Bennett from fleeing, discarded Bennett's clothing and his own blood-covered jeans, and threw his gun into the woods.

## II.

Defendant was indicted by a grand jury for first-degree felony murder, *N.J.S.A.* 2C:11–3(a)(3); second-degree robbery, *N.J.S.A.* 2C:15–1; first-degree robbery, *N.J.S.A.* 2C:15–1; first-degree aggravated manslaughter, *N.J.S.A.* 2C:11–4(a); second-degree reckless manslaughter, *N.J.S.A.* 2C:11–4(b); second-degree aggravated assault, *N.J.S.A.* 2C:12–1(b)(1); third-degree aggravated assault, *N.J.S.A.* 2C:12–1(b)(2); fourth-degree aggravated assault, *N.J.S.A.* 2C:12–1(b)(4); second-degree possession of a weapon for an unlawful purpose, *N.J.S.A.* 2C:39–4(a); third-degree unlawful possession of a weapon, *N.J.S.A.* 2C:39–5(b); and fourth-degree tampering with physical evidence, *N.J.S.A.* 2C:28–6(1).

After the trial court denied his motion to suppress his January 20, 2006 statement to police officers, defendant entered into a plea agreement with the State. Under the terms of that plea agreement, defendant agreed to plead guilty to second-degree reckless manslaughter and second-degree robbery, and the State agreed to dismiss all remaining counts of the indictment. The State further agreed to recommend that defendant be sentenced to eight years in New Jersey State Prison on the reckless manslaughter count

and seven years in New Jersey State Prison on the robbery count, to be served consecutively. Both terms of incarceration were made subject to the eighty-five percent parole disqualification required by the No Early Release Act (NERA), *N.J.S.A.* 2C:43–7.2.

The trial court conducted a plea hearing on August 20, 2007. Defense counsel advised the trial court that defendant intended to provide "a factual basis for entries of pleas of guilty to count 5, manslaughter, a second degree offense [and] count 2, robbery, a second degree offense," and counsel advised defendant as to the maximum penalties for those offenses. Defendant confirmed that he understood the terms of his plea agreement and the penal consequences of his guilty plea, that he had reviewed and truthfully answered his plea form, and that he had no questions about his guilty plea. Defense counsel conducted a plea colloquy with defendant, and the State followed up with a brief inquiry. We quote that colloquy at length later in this opinion, and we rely on it exclusively as the basis for our decision.

As provided in its plea agreement with defendant, the State dismissed all other charges. The trial court accepted defendant's guilty plea to second-degree reckless manslaughter and second-degree robbery, concluding that defendant had "knowingly, intelligently and voluntarily waived his right to a trial by jury," and that he was guilty of the two offenses.

On November 9, 2007, in accordance with the plea agreement, the trial court sentenced defendant to an eight-year prison term on the second-degree reckless manslaughter count and a seven-year prison term on the second-degree robbery count, to be served consecutively, both in New Jersey State Prison and both subject to the parole ineligibility provisions of NERA.

Defendant appealed his conviction and sentence. In an unpublished decision, an Appellate Division panel affirmed the trial court's denial of defendant's motion to suppress his January 20, 2006 statement to police. The panel held, however, that at his August 20, 2007 plea hearing, defendant had not provided an

adequate factual basis for his plea of guilty to second-degree reckless manslaughter. In the Appellate Division panel's view, the plea colloquy did not establish that on the night of Bennett's death, defendant had appreciated the risk that Bennett might die as a result of defendant's conduct. The panel concluded that there was insufficient evidence to support a finding, beyond a reasonable doubt, that defendant was aware of the risk that Bennett would die and consciously chose to ignore that risk. The panel vacated defendant's plea of guilty to the offense of reckless manslaughter.

The panel then addressed the remedy. Citing *State v. Barboza*, 115 *N.J.* 415, 558 *A.*2d 1303 (1989), the panel acknowledged that when an appellate court concludes that a guilty plea lacks an adequate factual basis, the ordinary remedy is to vacate the defendant's conviction in its entirety, reinstate any claims dismissed by the State in accordance with a plea agreement, and restore the State and defendant to their respective positions prior to the guilty plea. Nonetheless, the Appellate Division panel fashioned a different remedy for this case. The panel relied on what it considered to be complicating factors—defendant's challenge to the factual basis for his plea with respect to only one of the two second-degree offenses to which he had pled guilty, and the fact that he had served approximately four years of his sentence at the time of the panel's decision. Relying upon *State v. Lightner*, 99 *N.J.* 313, 491 *A.*2d 1273 (1985), the panel vacated only defendant's reckless manslaughter conviction and instructed the trial court not to reinstate the remaining counts of defendant's conviction upon remand.

This Court granted the State's petition for certification, *State v. Campfield*, 208 *N.J.* 600, 34 *A.*3d 782 (2011), and denied defendant's cross-petition for certification, 210 *N.J.* 217, 42 *A.*3d 889 (2012).

## III.

The State argues that the defendant provided an adequate factual basis for his plea of guilty to the offense of second-degree

reckless manslaughter given the events that led to Bennett's death. The State asserts that its burden at the plea hearing was to establish nothing more than that defendant recklessly caused Bennett's death by consciously disregarding a substantial and unjustifiable risk that death would result from his conduct, and that defendant need only have been aware of the possibility, not the probability, that the victim's death would result from his conduct. The State argues that in the context of the surrounding circumstances and the plea colloquy in its entirety, defendant's admissions establish an adequate factual basis for his plea. The State also challenges the Appellate Division panel's direction to the trial court on remand, contending that an appellate determination that a defendant failed to provide a factual basis for his plea should restore the parties to their pre-plea positions, with any dismissed counts of the defendant's indictment reinstated.

Defendant contends that his plea colloquy lacked a factual basis on two elements of the crime of reckless manslaughter, mens rea and causation. He relies upon the Appellate Division panel's decision and urges this Court to affirm that decision.

Amicus curiae Attorney General of New Jersey urges the Court to hold that the defendant's statements at his plea hearing established a sufficient factual basis for his plea of guilty to reckless manslaughter, and argues that when a guilty plea to an offense is vacated on appeal, the appropriate remedy is an order vacating the entire plea, reinstating all charges and returning the prosecution and defense to their respective positions prior to the plea.

IV.

We consider the trial court's factual findings at defendant's plea hearing in accordance with a deferential standard of review. An appellate court considers " 'whether the findings made could reasonably have been reached on sufficient credible evidence present in the record.' " *State v. Locurto,* 157 *N.J.* 463, 471, 724 *A.*2d 234 (1999) (quoting *State v. Johnson,* 42 *N.J.* 146, 162, 199 *A.*2d 809 (1964)). A reviewing court accords " 'deference to those

findings of the trial judge which are substantially influenced by his opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.' " *Ibid.* (quoting *Johnson, supra,* 42 *N.J.* at 161, 199 *A.*2d 809). With respect to determinations of law, however, appellate review is plenary. *State v. Handy,* 206 *N.J.* 39, 45, 18 *A.*3d 179 (2011); *Estate of Hanges v. Metro. Prop. & Cas. Ins. Co.,* 202 *N.J.* 369, 382–83, 997 *A.*2d 954 (2010); *Manalapan Realty v. Twp. Comm. of Manalapan,* 140 *N.J.* 366, 378, 658 *A.*2d 1230 (1995).

Trial courts conduct plea hearings in accordance with *Rule* 3:9–2, which provides in relevant part:

> The court, in its discretion, may refuse to accept a [defendant's] plea of guilty and shall not accept such plea without first questioning the defendant personally, under oath or by affirmation, and determining by inquiry of the defendant and others, in the court's discretion, that there is a factual basis for the plea and that the plea is made voluntarily . . . and with an understanding of the nature of the charge and the consequences of the plea.
>
> [*R.* 3:9–2.]

The court must "satisfy itself through inquiry of the defendant and others, in its discretion, that an adequate factual basis exists for the plea." *State ex rel. T.M.,* 166 *N.J.* 319, 326, 765 *A.*2d 735 (2001). The factual basis "provides a record for appellate review if the plea is later challenged and gives a court the opportunity to evaluate the conditions under which a plea is made." *Ibid.* (citing *Barboza, supra,* 115 *N.J.* at 421, 558 *A.*2d 1303). The trial court's adherence to *Rule* 3:9–2's requirement of a sufficient factual basis "insulates the guilty-plea conviction from subsequent attack by a defendant seeking relief from its consequences." *Id.* at 336–37, 765 *A.*2d 735.

█ Thus, when accepting a guilty plea, the trial court should inquire "among other things, (1) whether anyone had forced, threatened, or put [defendant] under pressure to plead guilty, (2) whether the defendant understood that he was relinquishing certain constitutional rights, (3) whether the defendant understood the nature of the charge and content of the sentencing recommendation, and (4) whether the defendant was in fact guilty of the

specific charge[.]" *Id.* at 336, 765 *A.*2d 735 (citing *State v. Smullen,* 118 *N.J.* 408, 411–12, 571 *A.*2d 1305 (1990)). This procedure ensures judicial oversight of "the final relinquishment" of the defendant's core constitutional right to be presumed innocent until proven guilty. *Smullen, supra,* 118 *N.J.* at 414, 571 *A.*2d 1305. It "affords the court an opportunity to observe the conditions under which the plea is made, provides a better record for appellate review ... and aids correctional agencies in the performance of their functions." *Barboza, supra,* 115 *N.J.* at 421, 558 *A.*2d 1303.

To that end, our law requires that each element of the offense be addressed in the plea colloquy. *T.M., supra,* 166 *N.J.* at 333–34, 765 *A.*2d 735; *State v. Sainz,* 107 *N.J.* 283, 293, 526 *A.*2d 1015 (1987); Pressler & Verniero, *Current N.J. Court Rules,* comment 1.3.2. on *R.* 3:9–2 (2013). The factual foundation may take one of two forms; defendant may either explicitly admit guilt with respect to the elements or may "acknowledge[ ] ... facts constituting the essential elements of the crime." *Sainz, supra,* 107 *N.J.* at 293, 526 *A.*2d 1015. The trial court " 'must be satisfied from the lips of the defendant that he committed the acts which constitute the crime.' " *T.M., supra,* 166 *N.J.* at 327, 765 *A.*2d 735 (quoting *Barboza, supra,* 115 *N.J.* at 422, 558 *A.*2d 1303 (citations omitted) (quotations omitted)). The trial court must overcome "a defendant's natural reluctance to elaborate on the details," and reject a guilty plea absent the defendant's admission of " 'the distasteful reality that makes the charged conduct criminal.' " *Id.* at 334–35, 765 *A.*2d 735 (quoting *Smullen, supra,* 118 *N.J.* at 415, 571 *A.*2d 1305). The judge's leading questions may be necessary to ensure an adequate factual basis for the guilty plea. *Id.* at 335, 765 *A.*2d 735.

The trial court's inquiry need not follow a "prescribed or artificial ritual." *Id.* at 327, 765 *A.*2d 735. "[D]ifferent criminal charges and different defendants require courts to act flexibly to achieve constitutional ends." *Ibid.* Instead, the defendant's admissions "should be examined in light of all surrounding circum-

stances and in the context of an entire plea colloquy." *Ibid.* The trial court's task is to ensure that the defendant has articulated a factual basis for each element of the offense to which he pleads guilty.

■ The remedy for an inadequate factual basis is an order vacating the guilty plea and restoring both parties to their positions prior to the trial court's acceptance of the plea. *Barboza, supra,* 115 *N.J.* at 420, 558 *A.*2d 1303. If an appellate court determines that "a plea has been accepted without an adequate factual basis, the plea, the judgment of conviction, and the sentence must be vacated, the dismissed charges reinstated, and defendant allowed to re-plead or to proceed to trial." *Ibid.*

## V.

In that setting, we review defendant's guilty plea to a violation of *N.J.S.A.* 2C:11-4(b). The offense of reckless manslaughter is a second-degree crime recognized by the New Jersey Criminal Code as a form of criminal homicide. *N.J.S.A.* 2C:11-2(a); *N.J.S.A.* 2C:11-4(b)(1). The first element of the offense is the mens rea, or state of mind. *N.J.S.A.* 2C:2-2(b)(3) defines recklessness for purposes of the Code:

A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation. [*N.J.S.A.* 2C:2-2(b)(3).]

The drafters of the Code explained the mental state necessary to a finding of recklessness:

As the Code uses the term, recklessness involves conscious risk creation. It resembles acting knowingly in that a state of awareness is involved but the awareness is of risk that is of probability rather than certainty; the matter is contingent from the actor's point of view. Whether the risk relates to the nature of the actor's conduct or to the existence of the requisite attendant circumstances or to the result that may ensue is immaterial; the concept is the same. The Code requires, however, that the risk thus consciously disregarded by the actor be substantial and unjustifiable; even substantial risks may be created without

recklessness when the actor seeks to serve a proper purpose. Accordingly, to aid the ultimate determination, the Code points expressly to the factors to be weighed in judgment: the nature and degree of the risk disregarded by the actor, the nature and purpose of his conduct and the circumstances known to him in acting. [II *The New Jersey Penal Code: Final Report of the New Jersey Criminal Law Revision Commission,* commentary to § 2C:2–2, at 41–42 (1971).]

 Accordingly, "when the State alleges criminal recklessness, it must demonstrate through legally competent proofs that defendant had knowledge or awareness of, and then consciously disregarded, 'a substantial and unjustifiable risk.'" *State v. Williams,* 190 *N.J.* 114, 124, 919 *A.*2d 90 (2007) (quoting *N.J.S.A.* 2C:2–2(b)(3)); *see also State v. Sexton,* 160 *N.J.* 93, 103, 733 *A.*2d 1125 (1999) (explaining "culpable mental state" of recklessness). To convict a defendant of reckless manslaughter in violation of *N.J.S.A.* 2C:11–4(b), the State need not prove that the defendant perceived a risk that the victim would certainly or probably die as a result of the defendant's conduct; the defendant has the required state of mind if he *"disregarded* only a *'possibility'* of death[.]" *State v. Jenkins,* 178 *N.J.* 347, 363, 840 *A.*2d 242 (2004) (citing *State v. Breakiron,* 108 *N.J.* 591, 605, 532 *A.*2d 199 (1987); *State v. Pearson,* 318 *N.J.Super.* 123, 135–36, 723 *A.*2d 84 (App. Div.1999)); *see also State v. Galicia,* 210 *N.J.* 364, 378, 45 *A.*3d 310 (2012); *State v. Curtis,* 195 *N.J.Super.* 354, 364, 479 *A.*2d 425 (App.Div.), *certif. denied,* 99 *N.J.* 212, 491 *A.*2d 708 (1984).[1]

 The second element of the offense of reckless manslaughter is causation. The Code addresses the relationship between the risk contemplated by the defendant and the effect of his conduct on the victim if the required mens rea is recklessness:

[T]he actual result must be within the risk of which the actor is aware ... or, if not, the actual result must involve the same kind of injury or harm as the probable

---

[1] In contrast, a finding that a defendant "caused death with an 'awareness and conscious *disregard* of the *probability* of death'" supports a conviction for the offense of aggravated manslaughter, a first-degree crime. *Jenkins, supra,* 178 *N.J.* at 363, 840 *A.*2d 242; *see also N.J.S.A.* 2C:11–4(a); *State v. Wilder,* 193 *N.J.* 398, 409, 939 *A.*2d 781 (2008); *State v. Cruz,* 163 *N.J.* 403, 417, 749 *A.*2d 832 (2000).

result and must not be too remote, accidental in its occurrence, or dependent on another's volitional act to have a just bearing on the actor's liability or on the gravity of his offense.

[*N.J.S.A.* 2C:2–3(c).]

Thus, when a defendant is tried for reckless manslaughter, the factfinder must determine whether the "result" of the defendant's reckless conduct—the victim's death—was within the scope of the risk contemplated by the defendant. *Id.* If it was not, the factfinder must consider whether holding the defendant criminally responsible for the result would be unjust, given the remoteness of the relationship between the defendant's act and the harm to the victim, accidental intervening causes or the volitional acts of others. *See State v. Pelham,* 176 *N.J.* 448, 460–61, 824 *A.*2d 1082 (2003); *State v. Martin,* 119 *N.J.* 2, 13, 573 *A.*2d 1359 (1990). As the Court held in *Pelham,* where the defendant invoked the victim's removal from a respirator five months after a motor vehicle accident as an intervening cause barring a manslaughter conviction, part of the jury's task is to scrutinize the causal relationship between the defendant's act and the result. *Pelham, supra,* 176 *N.J.* at 455–56, 460–61, 824 *A.*2d 1082.

Under the culpability assessment, "[w]hen the actual result is of the same character, but occurred in a different manner from that designed or contemplated [or risked], it is for the jury to determine whether the intervening causes or unforeseen conditions lead to the conclusion that it is unjust to find that the defendant's conduct is the cause of the actual result. Although the jury may find that the defendant's conduct was a 'but-for' cause of the victim's death . . . it may nevertheless conclude . . . that the death differed in kind from that designed or contemplated [or risked] or that the death was too remote, accidental in its occurrence, or dependent on another's volitional act to justify a murder conviction."

[*Id.* at 460–61, 824 *A.*2d 1082 (alteration in original) (quoting *Martin, supra,* 119 *N.J.* at 13, 573 *A.*2d 1359).]

Thus, if the victim's death occurred in a manner that is not a contemplated result of the defendant's act, the "variation between the result intended or risked and the actual result of defendant's conduct must not be so out of the ordinary that it is unfair to hold defendant responsible for that result." *Id.* at 461–62, 824 *A.*2d 1082. That concept is incorporated in the model jury charge for reckless manslaughter, which recites the State's burden to prove beyond a reasonable doubt the victim's death "was not so unex-

pected or unusual that it would be unjust to find the defendant guilty of reckless manslaughter." *N.J. Model Jury Charge* (Criminal), § 2C:11–4(b)(1) Reckless Manslaughter (Mar. 22, 2004).

The offense to which defendant pled guilty thus requires both the mens rea of recklessness and a causal nexus between his conduct and the victim's death. When the result of the defendant's conduct falls outside of the parameters of the contemplated risk of defendant's conduct, the foreseeability of that result is evaluated under a standard of fairness.

## VI.

In light of the elements of the offense of reckless manslaughter, we consider defendant's factual admissions at his plea hearing before the trial court on August 20, 2007. Questioned by his counsel, defendant confirmed that he came into contact with the victim, Bennett, on the night of January 17, 2006, at the apartment complex, and that he followed Bennett up a stairwell at the complex. Defense counsel explored the events leading to Bennett's death:

[DEFENSE COUNSEL:] And at some point in time because you were following him did Mr. Bennett try to escape and fall over a railing?

[DEFENDANT:] Yes.

[DEFENSE COUNSEL:] He hit his head, did he not?

[DEFENDANT:] Yes, he did.

[DEFENSE COUNSEL:] Was he injured?

[DEFENDANT:] Yes.

[DEFENSE COUNSEL:] Actually did you see some blood on the ground where his head hit?

[DEFENDANT:] Yes.

[DEFENSE COUNSEL:] Was he coherent at that point in time when he fell off the porch?

[DEFENDANT:] No.

Defendant next admitted that following Bennett's fall, he scoured the victim's pockets in search of money, and when Bennett awoke, the two engaged in a "scuffle." Thus, having come upon the victim already bleeding from a head injury, defendant

admittedly exacerbated his injuries by punching Bennett in the face four or five times.

Defendant then admitted that he forced Bennett to remove some of his clothing, and that the weather on that January night was cold. He agreed that he had "caused" Bennett to run into a wooded area, knowing that Bennett was "pretty drunk that night." Defense counsel completed his questioning with the following exchange:

[DEFENSE COUNSEL:] You would agree with me that the fact that [Bennett] had his clothes off on a cold night and he was drunk and you forced him to go into the wooded area was reckless on your part?

[DEFENDANT:] Yes.

[DEFENSE COUNSEL:] And that that was a contributing cause to his death.

[DEFENDANT:] Yes.

The State then briefly followed up on the defendant's colloquy, eliciting defendant's admissions that during his "scuffle" with Bennett he punched Bennett in the face, that defendant was not injured, and that the last time defendant saw Bennett, he was "only wearing boxer shorts and a T-shirt," notwithstanding the cold.

██ The factual inquiry before the trial court at defendant's plea hearing omitted some of the details that were provided by defendant in his January 20, 2006 statement to the police. That inquiry would have provided a more comprehensive record on appeal had the trial court and counsel undertaken a thorough exploration of defendant's state of mind on the night of Bennett's death. We caution trial courts, prosecutors and defense counsel that it is essential to elicit from the defendant a comprehensive factual basis, addressing each element of a given offense in substantial detail, when a defendant is pleading guilty to that offense.

██ The plea colloquy in this case, however, was sufficient to establish both elements of the offense of reckless manslaughter in violation of *N.J.S.A.* 2C:11–4(b). Defendant admitted his aware-ness of several facts that exacerbated the risk that Bennett would

die as a result of his conduct, and that those facts were relevant to both mens rea and causation. He conceded that Bennett was injured while being pursued by defendant, that he assaulted Bennett, and that he forced Bennett to remove most of his clothing, leaving him susceptible to the midwinter cold. He admitted his awareness that Bennett, intoxicated and bleeding in the wake of a serious fall and a violent attack, was incoherent when defendant forced him to flee alone into the woods. Indeed, defendant acknowledged that his conduct was reckless, and that it was a contributing factor in his victim's death.

Although there was no testimony suggesting that defendant anticipated that his victim would die by drowning, defendant understood that his actions recklessly exposed his victim to a risk of death. His testimony during the plea colloquy establishes that defendant's disregard of that risk "involve[d] a gross deviation from the standard of conduct that a reasonable person would observe" in his situation. *N.J.S.A.* 2C:2–2(b)(3). It also confirms that he "had knowledge or awareness of, and then consciously disregarded, 'a substantial and unjustifiable risk.'" *Williams, supra,* 190 *N.J.* at 124, 919 *A.*2d 90 (quoting *N.J.S.A.* 2C:2–2(b)(3)). We therefore hold that defendant's guilty plea was accompanied by a factual basis that satisfies *Rule* 3:9–2.

Although our holding obviates the need to address in detail the remedy imposed by the Appellate Division panel, we note that following revocation of a plea agreement, the parties must be restored to their respective positions prior to the guilty plea, and all counts dismissed by the trial court in accordance with a plea agreement must be reinstated. *Barboza, supra,* 115 *N.J.* at 420, 427, 558 *A.*2d 1303. To the extent this situation should arise in the future, trial courts should follow the approach taken in *Barboza.*

## VII.

The judgment of the Appellate Division is reversed, and defendant's conviction and sentence are reinstated.

Chief Justice RABNER and Justices LaVECCHIA and HOENS join in Justice PATTERSON's opinion. Justice ALBIN filed a separate dissenting opinion.

Justice ALBIN, dissenting.

Our jurisprudence commands that the factual basis for a guilty plea must come directly "from the lips of the defendant." *State v. Smullen*, 118 *N.J.* 408, 415, 571 *A.2d* 1305 (1990) (quoting *State v. Barboza*, 115 *N.J.* 415, 422, 558 *A.2d* 1303 (1989)) (restated in *State v. Slater*, 198 *N.J.* 145, 155, 966 *A.2d* 461 (2009)). Today, the majority pays lip service to that rule by imputing to defendant the culpable state of mind that was absent from his admissions in court.

A guilty plea must stand or fall by defendant's admissions in the plea colloquy. A court should not accept a guilty plea if a defendant fails to give a factual basis for an essential element of a crime. A court should not infer guilt, as the majority does here, to uphold an inadequate plea. When a defendant declines to admit guilt, it is the role of the jury—not this Court—to decide guilt. I agree with the Appellate Division that defendant's guilty plea must be vacated because defendant did not provide the necessary factual basis to support the plea.

I therefore respectfully dissent.

## I.

*Rule* 3:9–2 declares that a court "shall not accept" a guilty plea without first determining "that there is a factual basis for the plea." The factual basis must come "from the lips of the defendant," *Smullen*, *supra*, 118 *N.J.* at 415, 571 *A.2d* 1305 (internal quotation marks and citation omitted), and satisfy every element of the offense to which he is pleading guilty, *State ex rel. T.M.*, 166 *N.J.* 319, 333, 765 *A.2d* 735 (2001) (quoting *State v. Sainz*, 107 *N.J.* 283, 293, 526 *A.2d* 1015 (1987)). *See also* Pressler & Verniero, *Current N.J. Court Rules,* comment 1.3.1 on *R.* 3:9–2 (2013) (stating that "the trial judge . . . must elicit from the defendant a

factual basis sufficient to establish the existence of all elements necessary to support a conviction of the crime charged"). Our Court has decried the use of inferences—as opposed to admissions by the defendant—to satisfy the factual basis for a guilty plea. *T.M.*, *supra*, 166 *N.J.* at 334, 765 *A.*2d 735 (rejecting State's "position that inferential satisfaction of the factual basis for a guilty plea is acceptable").

The mandate that a factual basis be elicited directly from the defendant promotes an overarching public policy. We recognize that requiring a defendant, through his own words, to provide the factual basis for a guilty plea "in the long-run is the best means of ensuring that innocent people are not punished for crimes they did not commit[,]" and therefore "is essential to the very integrity of our criminal justice system." *State v. Taccetta*, 200 *N.J.* 183, 198, 975 *A.*2d 928 (2009).

In short, no assumption or inference from a court can substitute for the actual words of the defendant in assessing the adequacy of the factual basis of a guilty plea. But the majority has violated that simple canon of law in this manslaughter case by filling in the blanks—inferring a culpable state of mind that has not come from defendant's mouth during the plea colloquy. A review of the colloquy makes this point clear.

## II.

In accordance with a plea agreement, defendant agreed to plead guilty to both second-degree manslaughter and second-degree robbery. The court permitted defense counsel to conduct the colloquy to establish a factual basis for the two crimes. No one disputes that defendant gave a factual basis for robbery.

Defendant admitted that on the evening of January 17, 2006, he pursued Ivory Bennett up a stairway in the Sassafras Run Apartments in the city of Pleasantville.[2] In attempting to escape,

---

[2] Defense counsel posed a question misstating the year in which the events occurred. To avoid confusion, the correct year appears in the statement of facts.

Bennett fell over a railing and struck his head. After Bennett fell to the ground and was no longer coherent, defendant rifled through his pockets, taking whatever money he had. After Bennett awakened, the two scuffled. Defendant punched Bennett in the face, and, at defendant's behest, Bennett took off his jeans. Defendant left Bennett wearing only his boxer shorts and a T-shirt.

Having established a factual basis for robbery, defense counsel next engaged in the following exchange to address the manslaughter charge.

[DEFENSE COUNSEL:] Now would you describe the night in January as warm or cold?

[DEFENDANT:] It was cold.

[DEFENSE COUNSEL:] Now at some point in time did he run away into a wooded area?

[DEFENDANT:] Yes.

[DEFENSE COUNSEL:] Now you didn't know what happened in there. You later learned that he died in some water there. But you caused him to run into that wooded area, did you not?

[DEFENDANT:] Yes, I did.

[DEFENSE COUNSEL:] And when he ran into the wooded area, by the way, you knew that he was pretty drunk that night, correct?

[DEFENDANT:] Yes, I knew.

[DEFENSE COUNSEL:] You would agree with me that the fact that he had his clothes off on a cold night and he was drunk and you forced him to go into the wooded area was reckless on your part?

[DEFENDANT:] Yes.

[DEFENSE COUNSEL:] And that that was a contributing cause to his death.

[DEFENDANT:] Yes.

To be clear, this is the entirety of the record on which the plea to manslaughter rises or falls.[3] The plea colloquy does not

---

[3] The majority's recitation of the facts is based on an out-of-court statement, purportedly given by defendant to the police—a statement never affirmed by defendant at the plea colloquy. *State v. Campfield*, 213 *N.J.* 218, 224–26, 61 *A.*3d 1258, 1261–62 (2012). That statement is not part of the record and should not be referred to in the majority's opinion. It is not referred to here. One must wonder why the majority's reference to that statement is necessary if the plea colloquy were adequate.

establish all the elements necessary for a finding of guilt of manslaughter. Specifically, defendant never admitted that he had an awareness of a risk that by chasing Bennett into the woods he might cause Bennett's death. In other words, defendant did not admit that he possessed the state of mind that is an essential element of the crime of manslaughter. It is not enough that defendant admitted to robbing and assaulting Bennett; that he recklessly chased the injured Bennett into the woods half-clothed and drunk; or that he later learned that Bennett died in the woods. It is not even enough that defendant accepted that he "was a contributing cause to his death."

However harsh the facts, process matters. The plea colloquy failed to elicit an admission from defendant that he was aware that his actions posed the risk of causing death and that he consciously disregarded that risk.

I now turn to the elements of the crime of manslaughter to underscore the deficiency of defendant's guilty plea.

### III.

A person commits manslaughter when he *recklessly* causes death. *N.J.S.A.* 2C:11–4(b) (emphasis added). The term "recklessly"—as defined in the New Jersey Code of Criminal Justice—sets forth the contours of the culpable state of mind necessary to commit manslaughter. In a manslaughter case, "[a] person acts recklessly ... when he consciously disregards a substantial and unjustifiable risk that [death] will result from his conduct." *N.J.S.A.* 2C:2–2(b)(3).[4] Stated more precisely, a defendant cannot

---

[4] The full definition of "recklessly" set forth in the Criminal Code is:

A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

be found guilty of manslaughter unless he "had knowledge or awareness of ... 'a substantial and unjustifiable risk'" and "then consciously disregarded" it. *State v. Williams*, 190 *N.J.* 114, 124, 919 *A.*2d 90 (2007) (quoting *N.J.S.A.* 2C:2–2(b)(3)). Because "reckless behavior involves the conscious disregard of a known risk ... the State must prove the fact that the defendant knew of the risk." Cannel, *New Jersey Criminal Code Annotated*, comment 4 on *N.J.S.A.* 2C:2–2(b)(3) (2011). When a defendant pleads guilty to manslaughter he must admit to having the state of mind that the State would otherwise have to prove if the case went to trial.

The failure to elicit defendant's state of mind in the plea colloquy in this case vitiates the integrity of the guilty plea. For whatever reason, defendant was not asked during the plea colloquy whether he knew that by chasing Bennett into the woods Bennett might possibly die there in some manner, even if not by the happenstance of drowning. Someone—the court, defense counsel, or the prosecutor—needed to establish from the lips of defendant that he knew of the risk of death to which he was exposing Bennett and that he consciously disregarded it. After the plea colloquy, this Court cannot fill in the missing element to the crime by using inferences. If defendant does not admit the requisite mental state necessary for the acceptance of a guilty plea, it is the role of the jury to determine state of mind based on surrounding circumstances. *See Williams, supra,* 190 *N.J.* at 124, 919 *A.*2d 90 ("In criminal prosecutions, proof of a defendant's mental state often must be inferred from the circumstances and the jury must make its determination by both the act and by the surrounding circumstances.") (internal quotation marks and citation omitted). Although a jury may draw inferences at a trial, a judge has no similar commission in taking a plea. A court will uphold a jury's verdict "as long as there are sufficient facts from which a reasonable jury might conclude beyond a reasonable

[*N.J.S.A.* 2C:2–2(b)(3).]

doubt that the defendant committed the act charged," but not a guilty plea "unless the defendant acknowledges his guilt." *State v. Davis*, 116 *N.J.* 341, 371, 561 *A*.2d 1082 (1989) (citations omitted), *superseded by constitutional amendment on other grounds, N.J. Const.* art. I, ¶ 12.

The error that the majority makes—by imputing to defendant the state of mind necessary for manslaughter—is highlighted by defendant's own words to the probation officer preparing the presentence report:

> I had been drinking with friends and got drunk for the first time. I ended up robbing my friend, Ivory Bennett—we had a fight, and I hit him in the face. I took a few dollars out of his pocket. I took his clothes; he ran into the woods and drowned. *I didn't mean for him to die,* I feel messed up about this.
>
> [ (Emphasis added).]

First, during the plea colloquy, defendant did not admit an awareness that Bennett might die as a result of defendant's conduct. Second, immediately after the plea hearing, defendant appears to specifically deny that he knew that he was exposing Bennett to the risk of death, much less disregarding that risk. Instead of simply reviewing defendant's words at the plea colloquy, the majority acts as though it were the decisive juror by inferring guilt, thus upholding the guilty plea.

## IV.

The requirement that an admission of guilt come from the lips of the defendant had been a bedrock principle of our jurisprudence—until today. The record refutes the majority's pretension that it is following this rule. For this reason, I respectfully dissent. I would vacate the entirety of the guilty plea and allow defendant to proceed to a jury trial on all charges.[5]

---

[5] Unlike the Appellate Division, I believe that when a guilty plea to one charge is vacated, the plea agreement as a whole is a nullity, and the State retains the right to proceed to trial on all charges in the indictment. *See Barboza, supra,* 115 *N.J.* at 420, 558 *A*.2d 1303 ("[I]f an appellate court subsequently determines that a plea has been accepted without an adequate factual basis, the plea, the

*For reversal*—Chief Justice RABNER, and Justices LaVECCHIA, HOENS, and PATTERSON—4.

*For dissenting*—Justice ALBIN—1.

---

judgment of conviction, and the sentence must be vacated, the dismissed charges reinstated, and defendant allowed to re-plead or to proceed to trial."). On this point, the majority and I agree.