# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3376-18T2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

A. J. W.,

     Defendant-Appellant.

_____

Submitted June 1, 2020 – Decided August 13, 2020

Before Judges Messano and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment Nos. 10-06-1384 and 11-01-0162.

Joseph E. Krakora, Public Defender, attorney for appellant (Marc J. Friedman, Designated Counsel, on the briefs).

Theodore N. Stephens II, Acting Essex County Prosecutor, attorney for respondent (Hannah Faye Kurt, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant, A.J.W., appeals from the April 17, 2019 order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. Defendant was charged in a seventeen-count indictment with multiple first, second, and third-degree crimes related to his sexual activities with his minor stepdaughters, S.Y. and D.Y.[1] The indictment alleged defendant had sexual relations with S.Y. between January 1, 2004 and December 31, 2006, when she was nine to eleven years old. The indictment alleged he had sexual relations with D.Y. between April 1 to June 30, 2009, when she was sixteen to seventeen years old. Defendant also was charged in a separate indictment for assaulting a corrections officer.

In July 2011, defendant pled guilty pursuant to a negotiated agreement to an amended charge of second-degree sexual assault of D.Y.,[2] second-degree endangering the welfare of D.Y. by engaging in sexual conduct which would

---

[1] We use initials to protect the identities of the underage victims. R. 1-38(c)(9).

[2] Defendant pled guilty to count one of the indictment as amended. Count one originally charged defendant with first-degree aggravated sexual assault of a child who is at least thirteen years old but less than sixteen years old. N.J.S.A. 2C:14-2(a)(2). The plea agreement was structured so that defendant would plead guilty to the reduced charge of second-degree sexual assault by vaginally penetrating his stepdaughter after she had turned sixteen years of age on June 7, 2009. See infra note 9 and accompanying text.

tend to impair or debauch her morals, and third-degree aggravated assault of a law enforcement officer. Pursuant to the plea agreement all other charges were dismissed. In February 2013, defendant moved to withdraw his guilty plea. The trial court denied that motion and proceeded to sentence defendant on the sexual assault and endangering the welfare of a child offenses to concurrent ten-year prison terms. Defendant was sentenced on the aggravated assault conviction to a concurrent five-year term. We affirmed the sentence after an Excessive Sentence Oral Argument (ESOA). Defendant was released from prison in September 2017, after serving roughly four and one-half years in state prison. He thereafter filed a petition for PCR.

After reviewing the record and hearing oral argument, Judge John I. Gizzo rejected the contentions defendant raised in his PCR petition. The court found that defendant had not established a prima facie case for PCR and that an evidentiary hearing was not warranted. Defendant now appeals from Judge Gizzo's order.[3] He also contends for the first time that his trial, appellate, and PCR counsel provided constitutionally ineffective assistance by not arguing that he should have been permitted to withdraw his guilty plea before sentencing on the ground that the factual basis for sexual assault elicited at the plea hearing

---

[3] Defendant is not appealing all of the PCR court's rulings.

was inadequate. Specifically, defendant contends for the first time on this appeal that although he admitted at the plea hearing that he had vaginally penetrated D.Y. with his penis, he did not specifically state that he had done so knowingly. Defendant now asserts that D.Y. undressed him and placed his penis in her vagina while he was unconscious.

We have carefully reviewed the record and the briefs submitted by the parties in light of the foregoing legal principles and conclude that defendant has not established the basis for an evidentiary hearing much less the grounds upon which to vacate his guilty plea. With respect to the contentions raised in his PCR petition, we affirm for the reasons explained in Judge Gizzo's thorough, twenty-one page opinion. We also reject defendant's newly-minted argument that the factual basis he gave during the plea colloquy was insufficient. Because that argument lacks merit, defendant has not established that trial counsel, appellate counsel, or PCR counsel rendered constitutionally defective assistance by failing to raise that contention or that he suffered prejudice by their failure to do so.

## I.

We presume the parties are familiar with both the procedural history of this litigation and the facts relating to defendant's sexual relationship with his

A-3376-18T2

stepdaughters while he was living in the same house with them. Those circumstances are recounted in Judge Gizzo's written opinion and need not be repeated in this opinion.

We add that defendant's new claim regarding the sufficiency of the factual basis for his guilty plea is based on a statement D.Y. gave to a detective in which she said she "seduced [her] step-father about three times when he was drunk since he is an alcoholic and a drug addict." She further stated,

> When he came home drunk he was sort of out of it and the last time, he laid on his bed in the living room when he came home and I laid next to him like I always do and started kissing him, touching him and I got on top of him and had sex . . . .
>
> I got on top of him and I put his penis inside my vagina.

When she was asked by the detective about what happened during the previous encounters, she answered, "I don't remember. I only remember the last time."

II.

Defendant raises the following contentions for our consideration:

POINT I

THE DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL BY FAILING TO PROPERLY INVESTIGATE OR PREPARE A

5

DEFENSE, FAILING TO COMMUNICATE WITH HER CLIENT, AND COERCING HIM TO PLEAD GUILTY WITHOUT ESTABLISHING AN ADEQUATE FACTUAL BASIS; AND COUNSEL ON THE MOTION TO WITHDRAW THE PLEA WAS INEFFECTIVE FOR FAILING TO RECOGNIZE OR ARGUE TRIAL COUNSEL'S AFORESAID FAILURES.

POINT II

APPELLATE COUNSEL WAS INEFFECTIVE BY FAILING TO RAISE SUBSTANTIVE ISSUES ON APPEAL AND ALLOWING THE APPEAL TO ADDRESS ONLY THE SENTENCE.

POINT III

PCR COUNSEL WAS INEFFECTIVE FOR FAILING TO RECOGNIZE AN INSUFFICIENT FACTUAL BASIS WAS GIVEN FOR THE PLEA.

POINT IV

THE PCR COURT SHOULD HAVE GRANTED RELIEF OR MINIMALLY GIVEN MR. WALKER A PLENARY HEARING.

III.

We begin our analysis by acknowledging the legal principles that govern this appeal. PCR is not a substitute for direct appeal. R. 3:22-3. Rather, it serves the same function as a federal writ of habeas corpus. State v. Preciose, 129 N.J. 451, 459 (1992). When petitioning for PCR, a defendant must

establish, by a preponderance of the credible evidence, that he or she is entitled to the requested relief. Ibid. The defendant must allege and articulate specific facts that "provide the court with an adequate basis on which to rest its decision." State v. Mitchell, 126 N.J. 565, 579 (1992).

Both the Sixth Amendment of the United States Constitution and Article 1, paragraph 10 of the State Constitution guarantee the right to effective assistance of counsel at all stages of criminal proceedings. Strickland v. Washington, 466 U.S. 668, 686 (1984) (citing McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)); State v. Fritz, 105 N.J. 42, 58 (1987). To establish a violation of the right to the effective assistance of counsel, a defendant must meet the two-part test articulated in Strickland. Fritz, 105 N.J. at 58. "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687.

To meet the first prong of the Strickland test, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Ibid. Reviewing courts indulge in a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.

The second prong of the <u>Strickland</u> test requires the defendant to show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Strickland</u>, 466 U.S. at 687. The second <u>Strickland</u> prong is particularly demanding. "[T]he error committed must be so serious as to undermine the court's confidence in the jury's verdict or the result reached." <u>State v. Allegro</u>, 193 N.J. 352, 367 (2008) (quoting <u>Castagna</u>, 187 N.J. at 315).

Counsel's errors must create a "reasonable probability" that the outcome of the proceedings would have been different than if counsel had not made the errors. <u>Id.</u> at 694. This assessment is necessarily fact-specific to the context in which the alleged errors occurred. For example, when, as in this case, a defendant seeks "[t]o set aside a guilty plea based on ineffective assistance of counsel, a defendant must show . . . 'that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pled guilty and would have insisted on going to trial.'" <u>State v. Nunez-Valdez</u>, 200 N.J. 129, 139 (2009) (quoting <u>State v. DiFrisco</u>, 137 N.J. 434, 457 (1994) (alterations in original)).

The <u>Strickland/Fritz</u> two-pronged standard also applies to claims of ineffective assistance of appellate counsel. <u>State v. Morrison</u>, 215 N.J. Super.

8

540, 547 (App. Div. 1987). The hallmark of effective appellate advocacy is the ability to "winnow[] out weaker arguments on appeal and focus[] on one central issue if possible, or at most, on a few key issues." Jones v. Barnes, 463 U.S. 745, 751–52 (1983).

Short of obtaining immediate relief, a defendant may prove that an evidentiary hearing is warranted to develop the factual record in connection with an ineffective assistance claim. Preciose, 129 N.J. at 462–63. The PCR court should grant an evidentiary hearing when (1) a defendant is able to prove a prima facie case of ineffective assistance of counsel, (2) there are material issues of disputed fact that must be resolved with evidence outside of the record, and (3) the hearing is necessary to resolve the claims for relief. Id. at 462; R. 3:22-10(b). "[C]ourts should view the facts in the light most favorable to a defendant to determine whether a defendant has established a prima facie claim." Preciose, 129 N.J. at 462–63.

To meet the burden of proving a prima facie case, a defendant must show a reasonable likelihood of success under the Strickland test. Id. at 463. As a general proposition, we defer to a PCR court's factual findings "when supported by adequate, substantial and credible evidence." State v. Harris, 181 N.J. 391, 415 (2004) (quoting Toll Bros, Inc. v. Twp. of W. Windsor, 173 N.J. 502, 549

(2002)).  However, when the trial court does not hold an evidentiary hearing, we "may exercise de novo review over the factual inferences drawn from the documentary record."  Id. at 421 (citing Zettlemoyer v. Fulcomer, 923 F.2d 284, 291 n.5 (3d Cir. 1991)).  Similarly, we review de novo the PCR court's legal conclusions.  State v. Nash, 212 N.J. 518, 540–41 (2013) (citing Harris, 181 N.J. at 415–16).

## IV.

Applying the Strickland/Fritz test, Judge Gizzo explained why defendant had not established a prima facie case requiring an evidentiary hearing on his contentions.  Because we affirm for the reasons explained in Judge Gizzo's thorough written opinion, we need not re-address defendant's arguments raised in his PCR petition, but we add the following comments.  The trial court had adjourned the plea hearing a day to give defendant time to speak with his family about whether to accept the State's latest plea offer or to proceed to trial.  We note the State's plea offer was highly favorable and that presumably, it also benefitted the underage victims and the entire family.  The trial court noted when rejecting defendant's motion to withdraw his guilty plea that there would be unfair prejudice since withdrawal would require the victims to testify at trial.

A-3376-18T2

Furthermore, our review of the record shows the trial court conducted a thorough plea colloquy at which defendant acknowledged under oath that the plea was voluntary and not coerced as he now claims. When asked directly if anyone was forcing him to plead guilty, defendant answered, "No." Defendant acknowledged that he had enough time to talk to his attorney and stated that he was satisfied with the services she provided. He also confirmed that he was pleading guilty because he was guilty.

We take note of Judge Gizzo's conclusion that, "[t]o state it simply, [defendant] had little to no chance of acquittal if he proceeded to trial." As Judge Gizzo explained, defendant was "facing strict liability sex crimes where the two underage victims both made statements that they engaged in sexual intercourse with [defendant]. [Defendant], as a registered sex offender,[4] faced a [seventeen-count] indictment consisting mainly of first[-] and second[-]degree sex offenses." We add that in assessing defendant's chances of an acquittal, Judge Gizzo was aware of D.Y.'s statement to police in which she claimed that she initiated sexual contact during her last act of sexual intercourse with

---

[4] Defendant had previously been convicted of endangering the welfare of a child.

defendant. We therefore defer to Judge Gizzo's assessment, which is supported by adequate, substantial, and credible evidence. State v. Harris, 181 N.J. at 415.

V.

We turn next to defendant's new contention that his trial, appellate, and PCR counsel all failed to argue that the factual basis he gave when pleading guilty was insufficient in view of D.Y.'s statement to police. As noted, Judge Gizzo was aware of and referred to D.Y.'s statement in his opinion, and still found that defendant had little chance of an acquittal at trial. The PCR court was not afforded an opportunity, however, to consider defendant's new contention that all of his former attorneys rendered constitutionally deficient assistance by failing to argue that the trial court erred by not requiring defendant to admit explicitly he had knowingly penetrated D.Y.

We first address the State's argument that defendant is procedurally barred under Rule 3:22-5 from raising this issue on appeal because it was already decided by the ESOA panel that affirmed defendant's sentence. We disagree. It certainly is true that, "[a] prior adjudication on the merits ordinarily constitutes a procedural bar to the reassertion of the same ground as a basis for post-conviction review." Preciose, 129 N.J. at 476; see also State v. McQuaid, 147 N.J. 464, 484 (1997) ("If the same claim is adjudicated on the merits on direct

appeal a court should deny PCR on that issue, thereby encouraging petitioners to raise all meritorious issues on direct appeal").

In this instance, however, contrary to the State's assertion, the adequacy of the factual basis for defendant's guilty plea was not broached during defendant's direct appeal. The record shows that during the ESOA, defense counsel and the prosecutor discussed defendant's motion to withdraw his guilty plea applying the factors set forth in State v. Slater, 198 N.J. 145 (2009). However, the ESOA panel was not alerted to an issue concerning the sufficiency of the factual basis for the plea. In these circumstances, we do not believe we adjudicated that specific ground for withdrawing the guilty plea to sexual assault. Because the record before us is sufficient to resolve defendant's new argument conclusively, we choose to consider that issue on its merits in this appeal.

We review de novo a trial court's denial of a motion to vacate a guilty plea for lack of an adequate factual basis. State v. Tate, 220 N.J. 393, 403–04 (2015). "The factual basis for a guilty plea can be established by a defendant's explicit admission of guilt or by a defendant's acknowledgment of the underlying facts constituting essential elements of the crime." State v. Gregory, 220 N.J. 413, 419 (2015) (citing State v. Campfield, 213 N.J. 218 (2013)).

13

In Campfield, the Court explained the inquiry of a defendant during the plea hearing need not follow a "prescribed or artificial ritual." 213 N.J. at 231 (quoting State ex rel T.M., 166 N.J. 319, 326 (2001)). "[D]ifferent criminal charges and different defendants require courts to act flexibly to achieve constitutional ends." Ibid. (quoting T.M., 166 N.J. at 327) (alteration in original). "The trial court's task is to ensure that the defendant has articulated a factual basis for each element of the offense to which he pleads guilty." Id. at 232. The defendant's admissions, moreover, "should be examined in light of all surrounding circumstances and in the context of an entire plea colloquy." Id. at 231–32 (quoting T.M., 166 N.J. at 327).

To provide that context, we recite verbatim the portion of the plea colloquy in which the factual basis was elicited:

> Q [by Defense Counsel]: Mr. Walker, drawing your attention to sometime after June 7 2009, in Newark, New Jersey, did you engage in an act of sexual penetration with D.Y?
>
> A [by defendant]: Yes.
>
> Q: And D.Y., at that time, was over 16, correct?
>
> A: Yes.
>
> Q: Her date of birth is [date]?
>
> A: Yes.

14

Q: And you knew her date of birth?

A: Yes.

Q: Because you, in fact, stood in loco parentis with D,Y., having -- being her step-father and, at that time, residing in the household, correct?

A: Yes.

Q: I believe that satisfies the elements of the crime of -- under the provision of 2C:14-2C3.

[Prosecutor]: I'm -- I'm sorry, you need to be more specific as to sexual penetration --

[Defense Counsel]: Okay.

[Prosecutor]: as to what type.

[Defense Counsel]: Okay.

BY [Defense Counsel]:

Q: Mr. -- Mr. Walker, as a result of engaging in penile to vaginal sex with D.Y., you in fact, impregnated D,Y. correct?

A: Yes.

Q: And D.Y. subsequently gave birth to a daughter, [name], correct?

A: Yes.

Q: [D.Y.'s child] was born on [date], correct?

15

A: Yes.

Q: And you acknowledge that certain forensic tests reveal that you are, in fact, the father of [D.Y.'s child], correct?

A: Yes.

Q: And [D.Y.'s child] was a child based upon the conduct sexual penetration on the date sometime after June 7th, 2009 with D.Y. correct?

A: Yes.

[Defense Counsel]: Is that sufficient?

[Prosecutor]: State's satisfied as to that count.·

BY [Defense Counsel]:

Q: Mr. Walker, sometime, again, as a -- well, let's just say as a result of this act with D.Y., in -- after June 7th, 2009, you agree that you engaged in conduct that debauched D.Y's morals, correct?

A: Yes.

Q: Okay. This is as to Count 2, the endangering charge. And you did that because you acknowledge you had vaginal penetration, penis to vagina, with D.Y.?

A: Yes.

We agree with defendant the factual basis for a guilty plea must establish every element of the offense to which the defendant pleads guilty, Campfield,

16

213 N.J. at 232, including the culpable mental state.[5]  N.J.S.A. 2C:14-2(c)

provides that an actor is guilty of sexual assault if he commits an act of sexual

penetration[6] with another person under certain specified circumstances,

including where the victim was at least sixteen but less than eighteen years old

and the actor was a foster parent, a guardian, or stood in loco parentis within the

household.  This criminal statute does not expressly prescribe a culpable mental

state.

N.J.S.A. 2C:2-2(c)(3) provides that in the absence of an explicit

culpability requirement, unless a criminal statute clearly indicates a legislative

intent to impose strict liability,[7] it should be construed as defining a crime with

---

[5] Although defendant's argument is framed principally in terms of the failure to elicit an explicit admission of the culpable mental state for the crime of sexual assault, see N.J.S.A. 2C:2-2(a) ("[A] person is not guilty of an offense unless he acted purposely, knowingly, recklessly, or negligently, as the law may require."), we note that if one were to accept defendant's claim that he was unconscious at the moment of sexual penetration, then defendant would not have committed a voluntary act as required by N.J.S.A. 2C:2-1(a).

[6] For purposes of this case, the term "sexual penetration" means, "vaginal intercourse . . . between persons . . . either by the actor or upon the actor's instruction.  The depth of insertion shall not be relevant as to the question of commission of the crime."  N.J.S.A. 2C:14-1(c).

[7] The offense of sexual penetration of a minor imposes "strict liability" only with respect to the age of the victim.  See N.J.S.A. 2C:14-5(c) ("It shall be no defense to a prosecution for a crime under this chapter that the actor believed

the "knowing" type of culpability. N.J.S.A. 2C:2-2(b)(2), in turn, explains, "[a] person acts knowingly with respect to the nature of his conduct or the attendant circumstances if he is aware that his conduct is of that nature, or that such circumstances exist, or he is aware of a high probability of their existence."

It is not disputed that defendant during the plea colloquy did not explicitly say he had "knowingly" penetrated D.Y. The issue before us, therefore, is whether we reasonably can infer that defendant was aware he engaged in sexual penetration of D.Y. from the fact he admitted he was guilty of both sexual assault and of endangering her welfare, and from the facts he admitted to viewed in light of all surrounding circumstances and in the context the entire plea colloquy. Campfield, 213 N.J. at 231–32.

Our review of the case law convinces us that the factual basis for a guilty plea is not per se inadequate merely because the defendant does not expressly mention the mental state required to commit the crime. In Campfield, for example, the Court held that the element of recklessness under the manslaughter statute was sufficiently established by the defendant's admission that he beat the victim, forced him to remove most of his clothing, and chased him into the

_____

the victim to be above the age stated for the offense, even if such a mistaken belief was reasonable.").

woods in frigid weather. 213 N.J. at 236. So too, the Court in State v. Simon, held that the factual basis was adequate with respect to the required culpable mental state when the defendant admitted that he shot at the victim. 161 N.J. 416, 453 (1999). The Court noted, "[i]n addition to the defendant's own words, common sense informs us that when someone shoots at another person in the upper body region, such as the neck and head, the shooter's purpose is either to cause serious bodily injury that results in death or to actually cause death." Id. at 450.

Here too, we believe as a matter of common sense that when defendant admitted to vaginally penetrating his stepdaughter, he implicitly acknowledged that he penetrated her knowingly, that is, that he was aware of the penetration. Indeed, if defendant were unconscious, how could he recall the incident so that he could admit to its occurrence under oath? The fact he admitted to vaginal penetration, in other words, belies the notion he was unaware of the act of penetration.

Defendant nonetheless contends that given the unusual facts of this case—reflected in D.Y.'s statement to police—we should not infer defendant's culpable mental state from his "simple admission" of penetration. In support of that argument, defendant relies on the Supreme Court's decision in Gregory. In that

case the defendant admitted to constructive possession of controlled dangerous substances within 1,000 feet of a school but failed to acknowledge that he possessed the drugs "with the intent to distribute." 220 N.J. at 421–22. The Court held that the factual basis was inadequate. Id. at 422.

We believe the present situation is distinguishable and that defendant's reliance on Gregory is therefore misplaced. In that case, it was necessary for the defendant to admit the drugs were possessed with intent to distribute to differentiate the school zone crime the defendant was pleading to, N.J.S.A. 2C:35-7, from the less serious included offense of simple possession in violation of N.J.S.A. 2C:35-10. In contrast, a defendant's culpable mental state does not distinguish second degree sexual assault from a lesser included offense. Accordingly, we do not read Gregory to preclude us from inferring from defendant's admission that he acted knowingly in committing sexual assault.

Furthermore, D.Y.'s statement, viewed in its entirety, does not support defendant's claim that he was not aware that he had engaged in a voluntary act of penetration. Both counts defendant pled guilty to alleged ongoing crimes that occurred over a span of time. The indictment did not specify a particular act of

sexual intercourse committed on a specific day.[8]  The portion of D.Y.'s statement to police defendant now relies on provides some measure of detail only with respect to the last occasion during which sexual penetration occurred.  When asked by the detective what had happened on the other occasions, D.Y. said she did not remember.  She did not state, in other words, that defendant was "sort of out of it" and that she physically manipulated defendant's penis into her vagina on the prior occasions when they engaged in sexual relations.

Furthermore, the factual basis defendant gave for the endangering offense supports our conclusion that he admitted inferentially that he was aware that he had vaginally penetrated D.Y.  Defendant pled guilty to count two of the indictment which read in pertinent part that defendant "did knowingly engage in sexual conduct with D.Y. . . . which would tend to impair or debauch the morals of D.Y. . . . to wit: by vaginal penetration, penis to vagina . . . ."  As to that ongoing crime, defendant acknowledged under oath that he "had vaginal penetration, penis to vagina, with D.Y."

---

[8]  During the plea colloquy, defendant's attention was directed to "some time after June 7, 2009."  As we have noted, the plea agreement was structured for defendant's benefit so that he would only admit to sexual penetration after D.Y. turned 16 on June 7, 2009, thus constituting a second degree crime rather than the first degree crime originally charged in count one of the indictment.

As we have noted, the Court in Camfield explained that a defendant's admissions "should be examined in light of all surrounding circumstances and in the context of an entire plea colloquy." 213 N.J. at 327. Defendant's admission during the plea colloquy to the count charging endangering over the period from June 1, 2009 to June 30, 2009 shows that defendant committed a pattern of sexual penetrations during the course of his sexual relationship with D.Y.

## VI.

Considering all the surrounding circumstances, we conclude the factual basis was adequate to support defendant's guilty pleas to both sexual assault and endangering the welfare of a child. It follows that defendant's trial, appellate, and PCR counsel[9] were not ineffective under the first prong of the Strickland test by failing to argue the factual basis was inadequate. It also follows that

---

[9] We note that "Rule 3:22-6(d) imposes an independent standard of professional conduct upon an attorney representing a defendant in a PCR proceeding." State v. Hicks, 411 N.J. Super. 370, 376 (App. Div. 2010); see also State v. Webster, 187 N.J. 254, 257 (2006) (explaining the standard for PCR counsel); State v. Rue, 175 N.J. 1, 4 (2002) ("We hold that Rule 3:22-6 . . . governs the performance of PCR counsel and that if the standard of conduct imposed by that rule is violated, a new PCR proceeding will be required."). We also note the State asserts that defendant is precluded from raising a claim of ineffective assistance of PCR counsel because the issue was not presented to the PCR court.

defendant suffered no prejudice under the second prong of <u>Strickland</u> because any such contention lacked merit and thus would not have changed the outcome had it been raised.

In sum, we conclude that defendant has failed to establish by a preponderance of the evidence that he is entitled to vacate his guilty plea and, similarly, has not established a prima facie case of ineffective assistance sufficient to justify an evidentiary hearing. <u>Preciose</u>, 129 N.J. at 459, 463. To the extent we have not addressed them, any remaining arguments raised by defendant lack sufficient merit to warrant discussion in this opinion. <u>R.</u> 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3376-18T2