**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3640-16T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

MARK J. SPATUCCI,

     Defendant-Appellant.

_____

> Argued October 1, 2018 – Decided October 24, 2018
>
> Before Judges Fasciale and Gooden Brown.
>
> On appeal from Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 15-04-0586.
>
> James M. Doyle argued the cause for appellant (Galantucci, Patuto, De Vencentes, Potter & Doyle, LLC, attorneys; David J. Altieri, on the briefs).
>
> Ian C. Kennedy, Special Deputy Attorney General/Acting Assistant Prosecutor, argued the cause for respondent (Dennis Calo, Acting Bergen County Prosecutor, attorney; Ian C. Kennedy, of counsel and on the brief).

PER CURIAM

Defendant Mark Spatucci appeals from an April 6, 2017 judgment of conviction for murder, N.J.S.A. 2C:11-3(a)(1)(2), and third-degree hindering apprehension, N.J.S.A. 2C:29-3(b)(1). The charges stemmed from defendant choking to death his on-again off-again girlfriend, with whom he had a tumultuous relationship and a child in common. After entering a negotiated guilty plea, but prior to sentencing, defendant moved to withdraw his plea. The motion court denied the motion and sentenced defendant in accordance with the plea agreement to a forty-five-year term of imprisonment, subject to the No Early Release Act, N.J.S.A. 2C:43-7.2, on the murder charge and a concurrent five-year term on the hindering charge.

On appeal, defendant raises the following points for our consideration:

POINT ONE

THE FACTUAL BASIS PROVIDED TO THE COURT FAILED TO ESTABLISH THE REQUISITE MENS REA FOR [MURDER].

POINT TWO

THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING THE DEFENDANT'S PRE-SENTENCE MOTION TO VACATE OR WITHDRAW HIS GUILTY PLEA.

POINT THREE

THE TRIAL COURT ERRED IN SENTENCING THE DEFENDANT BY DOUBLE-COUNTING AGGRAVATING FACTOR ONE.

For the reasons that follow, we affirm.

Defendant pled guilty to murder and hindering apprehension pursuant to a plea agreement in which the State agreed to dismiss the remaining ten counts of the indictment.[1] At the plea hearing, in eliciting the factual basis, defendant was questioned by his attorney, the prosecutor, and the court. Defendant admitted that on the night of October 23, 2013, while at the victim's home, the two got into an argument during which defendant put the victim into a headlock and choked her until she stopped breathing. Defendant admitted knowing that his actions could result in the victim's death. Defendant also admitted that, afterwards, he returned to his parents' house and washed the clothes he was wearing in order to destroy any evidence of his crimes.

During the plea colloquy, defendant also adopted the sworn statement he provided members of the Bergen County Prosecutor's Office during questioning. In the statement, defendant confessed that he "killed [the victim,]" and

---

[1] The remaining counts of the indictment consisted of third-degree burglary, N.J.S.A. 2C:18-2; three counts of first-degree felony murder, N.J.S.A. 2C:11-3(a)(3); four counts of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(3) and (a)(6); second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a); and third-degree hindering apprehension, N.J.S.A. 2C:29-3(b)(4).

demonstrated with his right arm how he choked her until she stopped moving. He also admitted to the detectives that he knew that by choking the victim, he was killing her, but he did it because he knew that, otherwise, she would go to the police and that was his only option to avoid apprehension. After determining that defendant provided an adequate factual basis and had knowingly, voluntarily, and intelligently entered his guilty plea, as required by Rule 3:9-2, the plea court accepted the guilty plea and scheduled defendant's sentencing.

However, prior to sentencing, defendant replaced his attorney and moved to vacate or withdraw his guilty plea. Defendant asserted the plea should be vacated because the factual basis provided to the court during the plea colloquy failed to establish the purposeful or knowing mental state required for murder. Alternatively, defendant argued that he should be permitted to withdraw his plea based on the factors set forth in State v. Slater, 198 N.J. 145 (2009). Specifically, defendant asserted that his history of substance abuse, mental health issues, and volatile relationship with the victim provided several defenses to murder, including diminished capacity, intoxication and passion/provocation. However, because his psychiatric evaluation was not completed prior to him entering the plea and he was only afforded forty-eight hours to make a decision whether to accept the State's offer, his decision was uninformed. Further,

defendant asserted that there was no prejudice to the State inasmuch as no trial had been scheduled, and given the timing of the motion, the court was required to consider his application with liberality.

Following oral argument, on February 23, 2017, the motion court issued a written opinion, denying defendant's motion and determining defendant "failed to present sufficient grounds" to "vacate or withdraw his guilty plea[.]" Initially, the court found that "defendant's factual basis adequately established the elements of murder." Citing N.J.S.A. 2C:11-3(a)(1) and 2C:11-3(a)(2), the court recounted that the elements for murder required that "defendant purposely or knowingly cause[] death or serious bodily injury that resulted in death." According to the court, "purpose and knowledge are conditions of the mind" that "may . . . be inferred from the circumstances."

Relying on State v. Campfield, 213 N.J. 218, 231 (2013), the court pointed out that in order to establish a factual basis, "defendant may either explicitly admit guilt with respect to the elements or may acknowledge . . . facts constituting the essential elements of the crime." After careful review of the plea hearing transcript, the court concluded that defendant's "factual basis established the elements of purposeful[,] knowing murder." The court explained:

> [D]efendant admitted he knew he could kill the victim by choking her and preventing her from breathing. Defendant further admitted he purposely, knowingly choked the victim until she stopped breathing and moving. Moreover, the defendant admitted he killed the victim because he thought she would go to the police, and it seemed like the only option he had was to kill her. Therefore, the defendant admitted he purposely choked the victim until she stopped breathing so she could not go to the police. Without reciting verbatim the statutory definition of purposeful and knowing conduct, the factual basis was still established.

The court rejected defendant's contention that his plea colloquy only supported "the notion" that he "purposely and knowingly choked the victim, not that he purposely and knowingly killed the victim[,]" and was therefore only "reflective o[f] reckless conduct[.]" The court also rejected defendant's assertion that "he was simply confirming what he had told investigators rather than admitting guilt." The court described defendant's arguments as a "play-on-words approach" that "[did] not change the fact [that] a verbatim reading of the statutory language [was] not required."

In addressing defendant's motion to withdraw his plea, the court acknowledged that "[a] court has discretion to set aside a plea under the 'interests of justice' standard" and that "courts are to exercise their discretion liberally to allow plea withdrawals" for "applications made 'before sentencing[.]'" The court also acknowledged that application of the following four factors

6

prescribed in Slater informed the analysis: "(1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused." 198 N.J. at 157-58.

With respect to the first factor, relying on State v. Lipa, 219 N.J. 323, 333 (2014), the court determined that "defendant failed to provide 'specific, credible facts' to support his claim." On the contrary, defendant's acknowledgement while under oath that "he pled guilty because he was in fact guilty" and that "all answers on the plea form were his answers" and "were truthful[,]" belied any claim of innocence. The court also rejected defendant's claimed reason for withdrawing his guilty plea, namely, that "he did not have the appropriate information . . . to make a decision."

Finding defendant's claims unsupported by the record, the court rejected defendant's claims that "he was only given forty-eight hours to decide whether to accept or reject the plea offer"[2] and that "prior counsel" failed to "critically

_____

[2] To support his assertion that he was only given forty-eight hours to decide whether to accept the plea agreement, defendant highlights the plea court's comment during the plea hearing that it had "postponed the case for a couple of days to give [defendant] an opportunity to speak to his family and consult with

examine the viability of potential defenses[,]" discuss them with him, and file pre-trial motions. According to the court, during the plea colloquy, "defendant stated under oath" that he "had the opportunity to go over all police and investigation reports with prior counsel[,]" that he "discussed all of his potential defenses with prior counsel[,]" that "prior counsel answered all of his questions about the case[,]" and that "he was satisfied with prior counsel's services."

Further, in light of the fact that defendant entered the guilty pleas more than two-and-one-half years after he was initially charged with the crimes, the court observed that there were "multiple discussions" about the plea and defendant "was accommodated" in "mak[ing] his decision." Additionally, the court noted that "[a]lthough the plea-bargain prong is not to be given great weight," nonetheless "the plea bargain . . . was extremely fair in light of the serious nature of the crimes" and "the maximum exposure defendant face[d] if convicted on more than one count." Lastly, the court did not explicitly find that withdrawal would result in unfair prejudice to the State. This appeal followed.

---

[c]ounsel" in connection with plea negotiations. Like the motion court, we do not interpret the comment to indicate that defendant was only given forty-eight hours to make a decision in light of the fact that defendant was arrested and charged with the crimes on October 23, 2013, indicted on April 30, 2015, and pled guilty on May 20, 2016.

A-3640-16T1

On appeal, defendant renews his argument that the factual basis did not establish that he "acted purposely or knowingly to kill [the victim]" but instead was "reflective of reckless conduct." When a defendant challenges the factual basis for a guilty plea, our review is de novo. State v. Tate, 220 N.J. 393, 403-04 (2015). That is so because "[a]n appellate court is in the same position as the trial court in assessing whether the factual admissions during a plea colloquy satisfy the essential elements of an offense." Id. at 404.

Trial courts may not accept a guilty plea unless there is a factual basis supporting it. R. 3:9-2. "Indeed, 'it is essential to elicit from the defendant a comprehensive factual basis, addressing each element of a given offense in substantial detail.'" State v. Perez, 220 N.J. 423, 432 (2015) (quoting Campfield, 213 N.J. at 236). Thus, trial courts "must be satisfied from the lips of the defendant . . . that he committed every element of the crime charged[.]" Id. at 432-33 (citations and internal quotation marks omitted).

The factual foundation for the plea "may take one of two forms[:] defendant may either explicitly admit guilt with respect to the elements or may 'acknowledge[] . . . facts constituting the essential elements of the crime.'" Campfield, 213 N.J. at 231 (second and third alterations in original) (quoting State v. Sainz, 107 N.J. 283, 293 (1987)). However, the trial court's inquiry

need not follow a "prescribed or artificial ritual[,]" and the defendant's admissions should be examined in light of all surrounding circumstances in the context of an entire plea colloquy.  Id. at 231-32 (citation omitted).

In fact, trial courts may "consider at the plea hearing stipulations and facts admitted or adopted by the defendant when assessing the adequacy of a defendant's factual basis."  State v. Gregory, 220 N.J. 413, 420 (2015).

> Receiving a factual statement directly from a defendant or obtaining a defendant's acceptance of the veracity of facts in a written statement or report that addresses each element of the charged offense reduces the possibility that a defendant will enter a guilty plea to an offense that he has not committed.
>
> [Perez, 220 N.J. at 433.]

A defendant has acted with the requisite state of mind for purposeful or knowing murder when, with respect to causing death or serious bodily injury resulting in death, the defendant's "conscious object" is to cause such a result, N.J.S.A. 2C:2-2(b)(1),  or the defendant is aware "that it is practically certain that his conduct will cause such a result."  N.J.S.A. 2C:2-2(b)(2).  In State v. Simon, 161 N.J. 416, 449 (1999), the defendant fired two shots within six feet of the victim's upper body, causing the victim's death.  The defendant argued that his guilty plea could not sustain a conviction for purposeful or knowing murder because he only intended "to get the officer away from him" to avoid

returning to prison and was "unaware" that his conduct was "'practically certain' to cause death or serious bodily injury that results in death." Ibid.

The Simon Court rejected the defendant's argument and found the factual basis adequate. According to the Court:

> In addition to defendant's own words, common sense informs us that when someone shoots at another person in the upper body region, such as the neck and head, the shooter's purpose is either to cause serious bodily injury that results in death or to actually cause death, especially where no other plausible explanation is given. Although defendant claims he did not specifically aim his gun at [the victim's] upper body region, he admits that he intended the bullet to hit the victim and that his purpose in shooting [the victim] was to cause serious bodily injury if not to kill him. Moreover, the circumstances under which defendant shot the victim - at close range, two shots, not one, to the upper body region - manifested an indifference to whether the victim was killed instantly or eventually died from the infliction of serious bodily injury. Therefore, defendant's plea established that he had the requisite mens rea for purposeful or knowing murder pursuant to N.J.S.A. 2C:11-3a(1) and (2) . . . .
>
> [Id. at 450.]

Here, defendant answered affirmatively to the questions posed by his attorney, the prosecutor, and the court. He admitted choking the victim until she stopped breathing. He also admitted to the detectives during questioning that he knew that by choking the victim, he was killing her, but it was his only

11

option to avoid apprehension. We are satisfied that defendant sufficiently acknowledged facts that constituted the essential elements of murder. Common sense and defendant's own words inform us that when defendant intentionally choked the victim until she stopped breathing, it was practically certain that his conduct would cause serious bodily injury that resulted in death or actually cause death. Therefore, we conclude defendant's guilty plea was accompanied by a sufficient factual basis, as required by Rule 3:9-2.

Next, defendant argues the court abused its discretion "in its review of the factors enumerated in Slater, with particular consideration of the fact that this motion was made prior to sentencing[.]" (Emphasis omitted). We will not disturb a "trial court's denial of defendant's request to withdraw his guilty plea" unless "there was an abuse of discretion which renders the lower court's decision clearly erroneous," Simon, 161 N.J. at 444 (citing State v. Smullen, 118 N.J. 408, 416 (1990)), or the trial court exercised a "clear error of judgment[.]" State v. Munroe, 210 N.J. 429, 448 (2012) (quoting State v. Koedatich, 112 N.J. 225, 313 (1988)). We review a trial court's Slater analysis under an abuse of discretion standard "because the trial court is making qualitative assessments about the nature of a defendant's reasons for moving to withdraw his plea and

the strength of his case and because the court is sometimes making credibility determinations about witness testimony." Tate, 220 N.J. at 404.

"The withdrawal of a guilty plea is not an absolute right[,]" Simon, 161 N.J. at 444, (quotation omitted), and the defendant bears the burden of establishing a basis for relief. Slater, 198 N.J. at 156. "[F]indings made by the trial court when accepting the plea, constitute a 'formidable barrier' which defendant must overcome before he will be allowed to withdraw his plea." Simon, 161 N.J. at 444 (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)). "That is so because '[s]olemn declarations in open court carry a strong presumption of verity.'" Ibid. (alteration in original) (quoting Blackledge, 431 U.S. at 74). Additionally, whether a defendant seeks to withdraw a plea before or after sentencing, "[t]iming matters." Slater, 198 N.J. at 160. Thus, at or before sentencing, a "defendant shall be permitted to withdraw" a guilty plea if "the interests of justice would not be served by effectuating the [plea] agreement[,]" R. 3:9-3(e), and, in such cases, "courts are to exercise their discretion liberally to allow plea withdrawals." Slater, 198 N.J. at 156.

"No single Slater factor is dispositive; 'if one is missing, that does not automatically disqualify or dictate relief.'" State v. McDonald, 211 N.J. 4, 16-17 (2012) (quoting Slater, 198 N.J. at 162). With respect to the first factor, "[a]

bare assertion of innocence is insufficient to justify withdrawal of a plea." Slater, 198 N.J. at 158. Instead, a defendant must "present specific, credible facts and, where possible, point to facts in the record that buttress [his or her] claim." Ibid. Indeed, there must be more than just a "change of heart" to warrant leave to withdraw a guilty plea once entered. Id. at 157. The second Slater factor, "focuses on the basic fairness of enforcing a guilty plea by asking whether defendant has presented fair and just reasons for withdrawal, and whether those reasons have any force." Id. at 159. Although we are not to approach the reasons for withdrawal with "skepticism," we "must act with 'great care and realism' because defendants often have little to lose in challenging a guilty plea." Id. at 160 (citing State v. Taylor, 80 N.J. 353, 365 (1979)).

With respect to the third Slater factor, the Court noted that "defendants have a heavier burden in seeking to withdraw pleas entered as part of a plea bargain." Ibid. However, the Court did "not suggest that this factor be given great weight in the balancing process." Id. at 161. As to the fourth factor, the Court stated that there was "no fixed formula to analyze the degree of unfair prejudice or advantage that should override withdrawal of a plea" and that "courts must examine this factor by looking closely at the particulars of each

14

case." Ibid. Nonetheless, the State need not show prejudice "if a defendant fails to offer proof of other factors in support of the withdrawal of a plea." Id. at 162.

In Lipa, defendant presented a certification asserting that he was innocent because he was physically unable to climb into the victim's bedroom window to commit a sexual assault, having recently undergone knee surgery. 219 N.J. at 333. The defendant also submitted photographs of his knee after the surgery and the exterior of the building in question. Ibid. The Court concluded that these specific facts "provided more than a 'bald assertion'" and were sufficient to satisfy the first prong of the Slater analysis. Id. at 334.

By contrast, the proofs submitted by defendant here fall short of the factual showing deemed sufficient in Lipa to establish a colorable claim of innocence. To support the motion, instead of submitting a certification with specific, credible facts, defense counsel simply made blanket assertions regarding defendant's substance abuse, mental health, and volatile relationship with the victim, and speculated about potential defenses to explore. Thus, in the absence of any countervailing evidence, the motion court correctly found that defendant's acknowledgements during the plea colloquy while under oath belied

any claim of innocence.[3]  The court also correctly rejected defendant's claimed reasons for withdrawing his guilty plea, finding them unsupported by the record.

As to the third factor, the court found defendant had negotiated a very favorable plea agreement, given his exposure, and we agree that this factor favored denial of the motion.  See State v. Means, 191 N.J. 610, 619 (2007) (emphasizing that negotiated pleas are entitled to a high degree of finality and reiterating that a defendant carries a heavier burden to succeed in withdrawing a plea entered pursuant to a plea bargain).  Finally, although the court did not find prejudice to the State, because defendant failed to establish the first three Slater factors, demonstration of prejudice to the State was not required.  198 N.J. at 162.  Because the balancing of the Slater factors disfavors allowing withdrawal of defendant's guilty plea notwithstanding the timing of his motion, we conclude that the court did not abuse its discretion in denying the motion.

Defendant argues in his final point that the court erred in sentencing him by "double-counting aggravating factor one[.]"  Before sentencing defendant, the court reviewed the presentence report as well as the submissions of the parties, including the postmortem report and text messages defendant sent to the

---

[3]  There is no supporting certification in the record asserting defendant's innocence or contradicting defendant's admissions during the plea colloquy, and the court did not refer to one in adjudicating the motion.

victim "replete with negative" and "disturbing" references. On the murder charge, the court found aggravating factors one (nature and circumstances of the offense, including whether it was committed in an especially heinous, cruel, or depraved manner), N.J.S.A. 2C:44-1(a)(1); three (risk to reoffend), N.J.S.A. 2C:44-1(a)(3); and nine (need to deter), N.J.S.A. 2C:44-1(a)(9). The court found no mitigating factors. Acknowledging that aggravating factor one is often "considered to be double counting[,]" the court found it appropriate for consideration in this case because "strangulation" does not result in "instant" death but is instead "a painful and violent process."

Our review of the record reveals that the court's finding of aggravating factor one was appropriate, and did not constitute impermissible double-counting of an element of the charged crime. See State v. Fuentes, 217 N.J. 57, 74-75 (2014) (noting that "[i]n appropriate cases, a sentencing court may justify the application of aggravating factor one, without double-counting, by reference to the extraordinary brutality involved in an offense"). Further, based on our deferential standard of review and the presumed reasonableness of a bargained sentence, id. at 70-71, we are satisfied that the court followed the sentencing guidelines, and imposed a sentence that does not "shock the judicial conscience" in light of the facts of the case. State v. Roth, 95 N.J. 334, 364-65 (1984).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION