**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5133-17T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

CARL L. MOORE, a/k/a
CARL T. MOORE,

     Defendant-Appellant.

_____

Argued February 25, 2020 – Decided April 2, 2020

Before Judges Yannotti and Firko.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Indictment No. 16-07-0102.

John Walter Douard, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; John Walter Douard, of counsel and on the briefs).

Amanda Gerilyn Schwartz, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Amanda Gerilyn Schwartz, of counsel and on the brief).

Appellant filed pro se supplemental briefs.

PER CURIAM

After the trial court denied his motion to suppress evidence obtained incident to his arrest, defendant pled guilty to second-degree unlawful possession of a weapon (handgun) and other offenses. The court sentenced defendant to a six-year prison term, with three-and-one-half years of parole ineligibility. Defendant appeals from the judgment of conviction dated May 11, 2018. We affirm.

I.

On July 6, 2016, a grand jury returned an indictment charging defendant with second-degree unlawful possession of a Glock Model 22 .40 caliber handgun without having a permit to carry the same, N.J.S.A. 2C:39-5(b) (count one); fourth-degree possession of a defaced firearm, N.J.S.A. 2C:39-9(e) (count two); and fourth-degree possession of hollow nose or dum-dum bullets, N.J.S.A. 2C:39-3(f) (count three). The trial court thereafter denied defendant's motion to compel the State to disclose the identity of a confidential informant (CI).

Defendant later filed a motion to suppress physical evidence on the ground that the evidence had been obtained as a result of an illegal arrest. The judge conducted an evidentiary hearing on the motion. At the hearing, Detective

Crystal Everett of the street crimes unit of the Trenton Police Department (TPD) stated that on February 19, 2016, she was on patrol when she received a call from Detective Katherine Cox. Cox told Everett that Detective Astbury informed her that an individual with defendant's name was carrying a gun. According to Cox, Astbury obtained the information from a CI, who had been involved in "dozens of investigations leading to multiple arrests."

Cox said that Astbury was familiar with defendant and knew there were active warrants for his arrest. Astbury provided Cox with a description of defendant's clothing and the location where defendant could be found. Cox relayed that information to Everett. Cox also told Everett that defendant had active warrants for his arrest.

Everett entered defendant's name into a database and verified that he had an active warrant from Bordentown. Everett and her partner drove to the place where defendant was reported to be located. On the way, Everett pulled up a color photograph of defendant, which she and the other officer studied.

When the officers arrived at the general location where defendant was reported to be, they observed defendant and two other individuals on Wayne Avenue, a block away from Martin Luther King, Jr., Boulevard. Everett

A-5133-17T4

recognized defendant from the photograph and the description that Cox had provided. Everett parked her car and exited the vehicle with another officer.

The officers approached defendant and advised him they had a warrant for his arrest. They arrested defendant and searched him. During the search, Everett found a handgun tucked into the right side of defendant's waistband. Later, the gun was determined to be a defaced Glock handgun with fourteen rounds of ammunition inside, eight of which were dum-dum bullets. Defendant's criminal history revealed he was a person who was not permitted to possess a firearm.

The officers informed defendant of his Miranda[1] rights and transported him to the police station for processing. Everett reviewed defendant's arrest packet, which confirmed that at the time of his arrest, defendant had three active warrants, including the Bordentown warrant.

The motion judge placed his decision on the record. The judge stated that the facts of the case "are straightforward and relatively simple." The judge found that the police had a valid arrest warrant. They arrested defendant and lawfully conducted a search incident to the arrest, finding defendant was in possession of the defaced weapon and ammunition. The judge denied the motion to suppress.

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

The matter was scheduled for trial. After the jury had been selected, the trial judge asked whether defendant intended to take the position that he possessed the weapon after receiving threats. Defense counsel told the judge he intended to elicit testimony from defendant explaining that a person had "planted" the gun on him in retaliation for his previous cooperation with the State in an investigation. Defense counsel said this testimony was not to show that defendant possessed the gun out of fear, but that he did not knowingly possess the weapon.

The judge ruled defendant could present testimony that he did not knowingly possess the gun, but he could not present a historical narrative explaining why another person allegedly "planted" the gun on him. Defendant then advised the judge that he wanted to enter a conditional, open plea to the charges in the indictment. The State did not consent to entry of a conditional plea.

The judge allowed defendant to place on the record the testimony he would have given regarding the possession of the weapon. Defendant testified that he was arrested on February 19, 2016. He stated that at the time, he was on the corner of Wayne Avenue and Martin Luther King, Jr., Boulevard with three other individuals.

5

Defendant stated that one of the three individuals "stuck the gun" on him. Defendant said before that occurred, he was not in possession of the gun. He testified the other person leaned in towards him, pulled his "hoodie," and "shoved it, like." Defendant explained that when he used the word "it," he was referring to the gun. According to defendant, this other person stated, "this is for my homie."

Defendant said he understood that comment to mean the other person was doing "this" for the Bloods street gang. Defendant claimed the person "planted" the gun on him as "payback" because previously, defendant had provided information to the Mercer County Prosecutor's Office (MCPO) in connection with a murder investigation.

Defendant testified that after he cooperated with the MCPO, several attempts were made on his life. He described an incident in which he was sitting on the porch at his grandmother's home. Defendant said a "guy" appeared with a gun in his hand. According to defendant, this "guy ran up and . . . fired on me." He claimed the bullet went through his hoodie and got stuck in the porch.

Defendant stated that he survived five attempts on his life, and he described each incident. He asserted there was an "SOS" out on him and explained that the term "SOS" means "[s]hoot on sight." Defendant claimed he

reported the incidents to the police but they never investigated. He stated that he was aware of the threats on his life.

Defendant then pled guilty to all counts of the indictment and provided the court with the factual basis for the plea. The judge accepted defendant's plea, noting that "all issues [were] preserved and reserved for appeal[.]" Thereafter, the judge sentenced defendant to six years of incarceration, with a three-and-one-half-year period of parole ineligibility. This appeal followed.

On appeal, defendant argues:

> POINT I
> THE TRIAL JUDGE VIOLATED [DEFENDANT'S] RIGHT TO PRESENT A COMPLETE DEFENSE BY BARRING REFERENCE TO THE HISTORICAL CONTEXT THAT EXPLAINED WHY A GUN WAS PLANTED ON HIM.
>
> POINT II
> THE JUDGE SHOULD HAVE REJECTED [DEFENDANT'S] PLEA BECAUSE HE FAILED TO PROVIDE AN ADEQUATE FACTUAL BASIS TO JUSTIFY THE PLEA. (Not Raised Below).

Defendant has filed two pro se supplemental briefs. In his first supplemental brief, defendant argues:

> THE TRIAL COURT ERRED IN DENYING THE DEFENSE MOTION FOR THE SUPPRESSION OF EVIDENCE: THE ARRESTING OFFICER WAS NOT A NEUTRAL AND DETACHED JUDGE AUTHORIZED TO FIND PROBABLE CAUSE

A-5133-17T4

FROM A CONFIDENTIAL SOURCE'S
INFORMATION.

In the second supplemental brief, defendant argues:
THE TRIAL COURT ERRED BY RULING THE
ARRESTING DETECTIVE CYRSTAL EVERETT['S]
INCONSISTENT TESTIMONY DURING THE
SUPPRESSION HEARING WAS CREDIBLE
[THEREBY] VIOLATING DEFENDANT[']S
[RIGHTS UNDER THE FOURTH AND
FOURTEENTH AMENDMENTS TO THE
CONSTITUTION OF THE UNITED STATES].

II.

We turn first to defendant's contention that the trial judge erred by precluding him from presenting a "complete" defense to the charges in the indictment. He claims the judge erred by refusing to allow him to explain the historical background for his possession of the weapon, which defendant claimed had been "planted" on him.

The Constitution of the United States and the New Jersey Constitution guarantee criminal defendants "'a meaningful opportunity to present a complete defense.'" State v. Garron, 177 N.J. 147, 168 (2003) (quoting Crane v. Kentucky, 476 U.S. 683, 690 (1986)). "'[A]n accused is entitled to advance in his defense any evidence which may rationally tend to refute his guilt or buttress his innocence of the charge made.'" State v. Weaver, 219 N.J. 131, 150 (2014) (quoting State v. Garfole, 76 N.J. 445, 453 (1978)).

Here, the trial judge ruled that defendant would be allowed to testify at trial that he did not knowingly possess the handgun because shortly before he was arrested, someone "planted" the gun on him. The judge did not, however, permit defendant to provide his historical account of why this other individual "planted" the gun on him.

In the testimony placed on the record, defendant claimed he became a target for members of the Bloods street gang after he cooperated with the MCPO in connection with a murder investigation. Defendant asserted that he had been threatened and shot at several times. He asserted that on the date he was arrested, he was with three other persons and shortly before he was arrested, one of these individuals "planted" the gun on him. Defendant stated that when this individual "planted" the gun on him, he said he was doing "this" for "my homie," which defendant interpreted to mean the Bloods gang.

The judge found that defendant's historical background information was not relevant to the charges to be tried. We agree.

Relevant evidence is "evidence having a tendency in reason to prove or disprove any fact of consequence to the determination of the action." N.J.R.E. 401. Relevance consists of two considerations: probative value and materiality. State v. Buckley, 216 N.J. 249, 261 (2013) (citing N.J.R.E. 401). The probative

value of evidence is its "tendency . . . to establish the proposition that it is offered to prove." Ibid. (quoting State v. Wilson, 135 N.J. 4, 13 (1994)).

In addition, materiality is a fact that is "really in issue in the case." Ibid. (quoting State v. Hutchins, 241 N.J. Super. 353, 359 (App. Div. 1990)). "Evidence need not be dispositive or even strongly probative to clear the relevancy bar." Ibid. (citing State v. Coruzzi, 189 N.J. Super. 273, 302 (App. Div. 1983)). Rather, the evidence "need only have some tendency to prove a material fact." Ibid.

Defendant did not dispute that when he was arrested, he was in possession of the handgun and he did not have a permit to carry that weapon. Defendant claimed, however, he did not knowingly possess the gun because shortly before he was arrested, another person "planted" the weapon on him.

However, the history of defendant's relationship with that individual and the reasons why that person purportedly "planted" the weapon on defendant were not relevant to whether defendant knowingly possessed the defaced weapon and dum-dum bullets. This evidence did not have a "rational tendency to engender a reasonable doubt with respect to an essential feature of the State's case." See State v. Cotto, 182 N.J. 316, 332 (2005) (quoting State v. Fortin, 178 N.J. 540, 591 (2004)).

Therefore, the judge's refusal to allow defendant to present this narrative did not deny defendant of his right to present a complete defense. The evidence would not "rationally tend to refute [defendant's] guilt or buttress his innocence" of the charged offenses. Weaver, 219 N.J. at 150 (quoting Garfole, 76 N.J. at 453).

Furthermore, in denying defendant permission to present his historical narrative, the judge expressed his concern that the evidence would allow the jury to consider facts that are not a defense to the charges. The judge expressed a concern about "jury nullification." However, the judge essentially found that if defendant's historical narrative was admitted, the jury might wrongly perceive that the alleged threats and defendant's concern for his own safety were a basis to excuse his unlawful possession of the weapon. The judge's ruling was not a mistaken exercise of discretion.

### III.

Next, defendant argues that his guilty plea should be set aside because he failed to provide the court with an adequate factual basis for his plea. Defendant did not raise this issue in the trial court.

It is well-established that "a defendant may . . . challenge the sufficiency of the factual basis for his guilty plea on direct appeal." State v. Urbina, 221

11

N.J. 509, 527-28 (2015). The question of whether a defendant's factual admissions established the essential elements of the offense is an issue of law, which we review de novo. See State v. Campfield, 213 N.J. 218, 229-30 (2013).

Under Rule 3:9-2:

> A defendant may plead only guilty or not guilty to an offense. The court, in its discretion, may refuse to accept a plea of guilty and shall not accept such plea without first questioning the defendant personally, under oath or by affirmation, and determining by inquiry of the defendant and others, in the court's discretion, that there is a factual basis for the plea and that the plea is made voluntarily, not as a result of any threats or of any promises or inducements not disclosed on the record, and with an understanding of the nature of the charge and the consequences of the plea.

Therefore, "[b]efore a court can accept a defendant's guilty plea, it first must be convinced that (1) the defendant has provided an adequate factual basis for the plea; (2) the plea is made voluntarily; and (3) the plea is made knowingly." State v. Lipa, 219 N.J. 323, 331 (2014) (citing R. 3:9-2). The court "must not accept a guilty plea unless it is satisfied that the defendant is in fact guilty." Ibid.

"[I]t is essential to elicit from the defendant a comprehensive factual basis, addressing each element of a given offense in substantial detail." State v. Perez, 220 N.J. 423, 432 (2015) (quoting Campfield, 213 N.J. at 236). The defendant

may either "explicitly admit guilt with respect to the elements" or may acknowledge "'facts constituting the essential elements of the crime.'" Campfield, 213 N.J. at 231 (quoting State v. Sainz, 107 N.J. 283, 293 (1987)).

"Receiving a factual statement directly from a defendant . . . reduces the possibility that a defendant will enter a guilty plea to an offense that he has not committed." Perez, 220 N.J. at 433. A defendant is required to "do more than accede to a version of events presented by the prosecutor." Ibid.

Instead, the defendant must "acknowledge all of the facts that comprise the essential elements of the offense to which the defendant pleads guilty." Id. at 433-34. Once the court is "satisfied from the lips of the defendant that he committed every element of the crime charged," the court may accept the plea. Id. at 432-33 (internal quotations and citations omitted).

Here, the record indicates that defense counsel first attempted to elicit the factual basis for defendant's plea to the charged offenses:

> THE COURT: [Defense counsel], if you'll be kind enough to establish a factual basis?
>
> [DEFENSE COUNSEL]: Sure. Thank you, Your Honor. Mr. Moore, were you in Trenton, New Jersey on February 19[], 2016?
>
> [DEFENDANT]: Yes.

[DEFENSE COUNSEL]: And at that time, were you stopped by Trenton [Detective] Crystal Everett?

[DEFENDANT]: Yes.

[DEFENSE COUNSEL]: And did [Detective] Everett conduct a search of your body?

[DEFENDANT]: Yes.

[DEFENSE COUNSEL]: And did she recover a handgun?

[DEFENDANT]: Yes.

[DEFENSE COUNSEL]: And [to] the best of your knowledge, did the handgun contain dum-dum bullets[?]

[DEFENDANT]: I don't know -- I don't know actually what kind of bullets were --

[DEFENSE COUNSEL]: Okay. Do you have any reason to dispute that there were dum-dum bullets in the gun?

[DEFENDANT]: I guess not.

[DEFENSE COUNSEL]: Okay. And do you have any reason to dispute that the serial number on the firearm was defaced?

[DEFENDANT]: No.
. . .

[DEFENSE COUNSEL]: At the time you were stopped, you did not have a permit to either own or carry a weapon, correct?

14

[DEFENDANT]: Correct.

. . .

THE COURT: [Prosecutor]?

[PROSECUTOR]: Yes. Mr. Moore, the weapon that was recovered as part of the search of this felony was a Glock model 22 .40 caliber, correct?

[DEFENDANT]: Correct.

[PROSECUTOR]: And regarding the gun, you knowingly possessed that weapon, correct?

Before defendant answered this last question, defense counsel objected and asked the prosecutor to rephrase the question. He asked the prosecutor to inquire if defendant understood he could have been found to have possessed the weapon on the evidence had they proceeded to trial, not that he actually knowingly possessed it.

The prosecutor argued, however, that because knowing possession is an element of all three charges, defendant had to admit he knowingly possessed the defaced weapon and the dum-dum bullets. The judge commented that based on defendant's responses to the questions, it appeared that there was no knowing possession of the "three items."

The judge observed that it seemed that defendant was saying that he possessed the three items but did not know he was doing so. The judge

15

questioned whether defendant had provided an adequate factual basis for the plea. Defense counsel then questioned defendant.

> [DEFENSE COUNSEL]: Let me ask it this way, Judge. Mr. Moore, from the point that the weapon was placed on you to the point that [Detective] Everett searched you, did you knowingly possess a weapon?
>
> [DEFENDANT]: No.
>
> [DEFENSE COUNSEL]: Well, listen to my question again, okay? From the -- from the point that the gun was placed on you --
>
> [DEFENDANT]: Um-hum.
>
> [DEFENSE COUNSEL]: -- to the point that [Detective] Everett searched you, okay --
>
> [DEFENDANT]: Um-hum.
>
> [DEFENSE COUNSEL]: -- did you -- did you knowingly have a weapon on you?
>
> [DEFENDANT]: Yes.
> . . . .
>
> [PROSECUTOR]: I'm just not sure that's sufficient.

The judge took a recess to consider the matter further. After the recess, the judge allowed the prosecutor to question defendant further:

> [PROSECUTOR]: Mr. Moore, understanding that you're still under oath, on February 19[], 2016, in Trenton, did you knowingly possess a defaced Glock

16

model 22 .40 caliber gun for any period of time during that day.

[DEFENDANT]: Yes.

[PROSECUTOR]: Okay. And on that same day with that same weapon, it was loaded with dum-dum bullets, correct?

[DEFENDANT]: Correct.

[PROSECUTOR]: So for some period of time during that day, you knowingly possess those dum-dum bullets, correct?

[DEFENDANT]: Correct.

[PROSECUTOR]: Okay. I think that should be sufficient, Judge.

[DEFENSE COUNSEL]: I think so, Your Honor.

The judge found that defendant had provided an adequate factual basis for his plea to the charged offenses. The judge accepted the plea, finding defendant had entered the plea knowingly, intelligently, and voluntarily. The record supports the judge's determination. Defendant clearly admitted he knowingly possessed the defaced weapon and the dum-dum bullets.

We reject defendant's contention that he simply acceded to the prosecutor's version of the events. Defendant may have been initially reluctant to admit that he committed the offenses, as he claims. However, after the court

17

took a recess and defendant had the opportunity to consult with his attorney and consider the matter further, defendant stated unequivocally that he knowingly possessed the defaced weapon and the dum-dum bullets. We therefore conclude that defendant provided an adequate factual basis for his plea.

IV.

In his first pro se supplemental brief, defendant argues that the trial court erred by denying his motion to suppress the evidence obtained in the search incident to his arrest. He contends the arresting officer was not a neutral and detached judge who was authorized to find probable cause for the arrest.

The Fourth Amendment to the Constitution of the United States and Article I, paragraph 7 of the New Jersey Constitution protect persons from unreasonable searches and seizures. A warrantless search or seizure is presumptively invalid, and the State must establish that the search or seizure "falls within one of the few well-delineated exceptions to the warrant requirement." State v. Mann, 203 N.J. 328, 337-38 (2010) (quoting State v. Elders, 192 N.J. 224, 246 (2007)). One of the exceptions is a search incident to arrest. See State v. Oyenusi, 387 N.J. Super. 146, 153 (App. Div. 2006).

Thus, when a law enforcement officer arrests a person, the officer may "conduct a search of [the] 'person and the area within his immediate control'"

meaning "'the area from within which he might gain possession of a weapon or destructible evidence.'" Ibid. (quoting Chimel v. California, 395 U.S. 752, 763 (1969)). Where "'a custodial arrest of a suspect based on probable cause is a reasonable intrusion . . . , a search incident to the arrest requires no additional justification.'" Ibid. (quoting United States v. Robinson, 414 U.S. 218, 226 (1973)).

Here, the record shows that Cox told Everett a CI had informed the TPD that a person with defendant's name was at a particular location and that he was in possession of a gun. Cox described defendant's apparel. She told Everett that the CI previously had provided the TPD with reliable information, which resulted in multiple investigations and numerous arrests.

Cox also told Everett that defendant had outstanding warrants for his arrest, and Everett confirmed that defendant had an active warrant out of Bordentown, using the computer terminal in her patrol car. In addition, Everett checked defendant's photo and identified him when she found him near the location the CI had provided.

The motion judge found Everett's testimony "highly credible." The judge stated that Everett was "competent, calm, measured [and] confident" and "appeared to certainly have a good recollection of the facts of this matter." The

judge found that based on the information she had been provided, her corroboration of that information, and her training and experience, Everett had correctly determined that there was a valid arrest for defendant.

We must defer to the judge's factual findings because they are supported by sufficient credible evidence in the record and informed by the judge's ability to hear and see the witness's testimony. See State v. S.S., 229 N.J. 360, 374 (2017) (quoting State v. Elders, 192 N.J. 224, 244 (2007)). The record supports the judge's finding that Everett had probable cause to arrest defendant, and that the warrantless search incident to the arrest was valid.

In his second supplemental brief, defendant argues that the judge erred by finding Everett was a credible witness. According to defendant, Everett made certain statements about the Bordentown warrant and the arrest that were inconsistent with her police report. He also claims Everett's testimony about the arrest was inconsistent with the testimony of Rayshawn Marshall, who testified for defendant at the hearing. Defendant contends the judge did not thoroughly consider these inconsistencies when he found that Everett was credible.

We note that at the suppression hearing, Marshall testified that on February 19, 2016, he was with two other persons on Martin Luther King, Jr., Boulevard in Trenton. Marshall said he was coming from a corner store and was

going to his grandmother's house when the police arrived on the scene and arrested defendant.

According to Marshall, the officers put him and his companions "against the wall." He said the police "grabbed" defendant and "cuffed" him. He stated that the police searched him and his two companions. He asserted that the police "ran" the warrants during the stop, and that he and his companions "were clear." It appears that Everett did not mention Marshall in her report.

In ruling on the motion to suppress, the judge carefully reviewed Everett's and Marshall's testimony. The judge pointed out that during the encounter, Everett had been focused almost entirely on defendant, not the other persons who also were there when defendant was arrested. The judge noted that Everett did not search Williams and she may not have been aware of "some of what . . . occurred."

The judge concluded that overall, Everett's testimony about defendant's arrest was credible and reliable. The judge found that Everett had credibly testified that she had been informed there were active warrants for defendant's arrest, and she confirmed defendant had an active warrant out of Bordentown, using the computer terminal in her patrol car. There is sufficient credible

evidence in the record to support the judge's finding that Everett was a credible witness.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5133-17T4